## RUSSELL et al. v. WALKER et al.

No. 24059. Opinion Filed Oct. 11, 1932.

Rehearing Denied Nov. 22, 1932.

Sid White, for petitioner.

Hayes, Richardson, Shartel, Gilliland & Jordan and E. S. Ratliff, for respondents.

ANDREWS, J. This cause is before this court on a petition and relation for prohibition filed by the petitioners, Frank Russell, individually, and Frank Russell, as trustee, and an answer or response thereto filed by the respondents Paul Walker, Roy Hughes and C. C. Childers, members of and composing the Corporation Commission of the state of Oklahoma, and E. G. Dahlgren, a complainant before the Corporation Commission.

In the petition and relation it is alleged that the petitioners have special interests and property rights in and to two certain described tracts of land, upon each of which there is a producing oil and gas well; that the respondent E. G. Dahlgren had filed with the Corporation Commission his complaint in writing, charging that the Corporation Commission had made and promulgated certain orders regulating and limiting the production and taking of oil from the Oklahoma City oil field, and that the petitioners had violated said orders and overproduced said wells, and praying that said Corporation Commission hear said complaint and penalize the petitioners by closing said wells; that the Corporation Commission had assumed and usurped and was assuming and usurping power, jurisdiction, and authority to try said complaint and to grant said prayer, and praying a writ prohibiting the Corporation Commission from assuming or usurping this, a jurisdiction not granted it by law.

The response, in effect, was a general denial.

The respondents contend that their actions were and are authorized by the provisions of article 9 of the Constitution and the provisions of House Bill No. 168 of the Fifth Legislature. (Sections 7954 to 7963, inclusive, O. O. S. 1921; sections 11565 to 11-574, inclusive, O. S. 1931.)

The petitioners contend that the Corporation Commission does not have legislative, executive, and judicial power over oil and gas wells and the production of oil and gas therefrom; that the Legislature is without authority to vest the Corporation Commission with such powers, and that the Legislature has not attempted to vest the Corporation Commission with such powers.

The provisions of House Bill No. 168, supra, are as follows:

"Section 1. That the production of crude oil or petroleum in the state of Oklahoma, in such manner and under such conditions as to constitute waste, is hereby prohibited.

"Section 2. That the taking of crude oil or petroleum from any oil-bearing sand or sands in the state of Oklahoma at a time when there is not a market demand therefor at the well at a price equivalent to the actual value of such crude oil or petroleum is hereby prohibited, and the actual value of such crude oil or petroleum at any time shall be the average value as near as may be ascertained in the United States at retail of the by-products of such crude oil or petroleum when refined less the cost and a reasonable profit in the business of transporting, refining, and marketing the same, and the Corporation Commission of this state is hereby invested (vested?) with the authority and power to investigate and determine from time to time the actual value of such crude oil or petroleum by the standard herein provided, and when so determined said Commission shall promulgate its findings by its orders duly made and recorded, and publish the same in some newspaper of general circulation in the state.

"Section 3. That the term 'waste' as used herein, in addition to its ordinary meaning, shall include economic waste, underground waste, surface waste, and waste incident to the production of crude oil or petroleum in excess of transportation or marketing facilities or reasonable market demands. The Corporation Commission shall have authority to make rules and regulations for the prevention of such wastes, and for the protection of all fresh water strata, and oil and gas-bearing strata, encountered in any well drilled for oil.

"Section 4. That whenever the full production from any common source of supply of crude oil or petroleum in this state can only be obtained under conditions constituting waste as herein defined, then any person, firm, or corporation, having the right to drill into and produce oil from any such common source of supply, may take therefrom only such proportion of all crude oil and petroleum that may be produced therefrom, without waste, as the production of the well or wells of any such person, firm or corporation, bears to the total production of such common source of supply. The Corporation Commission is authorized to so regulate the taking of crude oil or petroleum from any or all such common sources of supply, within the state of Oklahoma, as to prevent the inequitable or unfair taking, from a common source of supply, of such crude oil or petroleum, by any person, firm, or corporation, and to prevent unreasonable discrimination in favor of any one such

common source of supply as against another.

"Section 5. That for the purpose of determining such production, a gauge of each well shall be taken under rules and regulations to be prescribed by the Corporation Commission, and said Commission is authorized and directed to make and promulgate, by proper order, such other rules and regulations, and to employ or appoint such agents with the consent of the Governor, as may be necessary to enforce this act.

"Section 6. That any person, firm, or corporation, or the Attorney General on behalf of the state, may institute proceedings before the Corporation Commission, or apply for a hearing before said Commission, upon any question relating to the enforcement of this act, and jurisdiction is hereby conferred upon said Commission to hear and determine the same. Said Commission shall set a time and place, when and where such hearing shall be had and give reasonable notice thereof to all persons or classes interested therein, by publication in some newspaper or newspapers having general circulation in the state, and in addition thereto, shall cause reasonable notice in writing to be served personally on any person, firm or corporation complained against. In the exercise and enforcement of such jurisdiction, said Commission is authorized to determine any question or fact, arising hereunder, and to summon witnesses, make ancillary orders, and use mesne and final process, including inspection and punishment as for contempt, analogous to proceedings under its control over public service corporations, as now provided by law.

"Section 7. That appellate jurisdiction is hereby conferred upon the Supreme Court in this state to review the action of said Commission in making any order, or orders, under this act. Such appeal may be taken by any person, firm, or corporation, shown by the record to be interested therein, in the same manner and time as appeals are allowed by law from other orders of the Corporation Commission. Said orders so appealed from shall not be superseded by the mere fact of such appeal being taken, but shall be and remain in full force and effect until legally suspended or set aside by the Supreme Court.

"Section 8. That in addition to any penalty that may be imposed by the Corporation Commission for contempt, any person, firm, or corporation, or any officer, agent, or employee thereof, directly or indirectly violating the provisions of this act, shall be guilty of a misdemeanor, and upon conviction thereof, in a court of competent jurisdiction, shall be punished by a fine in any sum not to exceed $5,000, or by imprisonment in the county jail not to exceed 30 days, or by both fine and imprisonment.

"Section 9. That in addition to any penalty imposed under the preceding section, any person, firm or corporation, violating the provisions of this act, shall be subject to have his or its producing property placed in the hands of a receiver by a court of competent jurisdiction, at the suit of the state through the Attorney General, or any county attorney, but such receivership shall only extend to the operating of producing wells and the marketing of the production thereof, under the provisions of this act.

"Section 10. That the invalidity of any section, subdivision, clause or sentence of this act shall not in any manner affect the validity of the remaining portion thereof."

The Supreme Court of the United States, in Champlin Refining Co. v. Corporation Commission et al., 52 Sup. Ct. Rep. 559, had before it for consideration a number of the provisions of House Bill No. 168, supra. Section 2 and section 8 of the bill were not construed by that court in that case for the stated reason that they were not before it for construction under the issues presented by the record in that case. By the decision of that court in that case, section 9 of the bill was held to be inoperative for the stated reason that it imposed a penalty for the violation of the provisions of the act, and that the provisions of the act were so vague and indefinite as to cause the penalty imposed to constitute a denial of due process of law. Notwithstanding that holding, it was held that by reason of section 10 of the bill, the invalidity of section 9 thereof did not affect the remaining portions thereof by reason of the divisibility of the act and the legislative intent shown.

In the Champlin decision it was said that:

"The improvident use of natural gas pressure inevitably attending such operations would cause great diminution in the quantity of crude oil ultimately to be recovered from the pool. Other lessees and owners of land above the pool would be compelled, for self-protection against plaintiff's taking, also to draw from the common source, and so to add to the wasteful use of lifting pressure. And because of the lack, especially on the part of the nonintegrated operators, of means of transportation or appropriate storage and of market demand, the contest would, as is made plain by the evidence and findings, result in surface waste of large quantities of crude oil,"

—and it was held that:

"It is not shown that the rule for proration prescribed in section 4 or any other

provision here involved amounts to or authorizes arbitrary interference with private business or plaintiff's property rights, or that such statutory rule is not reasonably calculated to prevent the wastes specified in section 3."

While every person has the right to drill wells on his own land and take from the pools below all the gas and oil that he may be able to reduce to possession, including that coming from land belonging to others, the right to take and thus to acquire ownership is subject to the reasonable exertion of the power of the state to prevent unnecessary loss, destruction, or waste, and that power extends to the taker's unreasonable and wasteful use of natural gas pressure available for lifting the oil to the surface, and the unreasonable and wasteful depletion of a common supply of gas and oil to the injury of others entitled to resort to and take from the same pool. Champlin Refining Co. v. Corporation Commission et al., supra. That rule applies, not only to the natural gas pressure, but to the hydrostatic pressure and to all other forces combining to constitute the reservoir energy incident to or existing in the common source of supply. That reservoir energy is essential to the production of oil from the source of supply. Without it, it would be impracticable, if not impossible, to produce oil from the depth at which it is found in the Oklahoma City field. It is owned in common by the owners of the common source of supply.

Under the rule stated in the Champlin Case, supra, and in C. C. Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841, it is within the police power of the state to impose reasonable regulations to the end that some of said owners may not take from the common source of supply more than their equitable share. That rule applies as well to the reservoir energy as to the oil and gas within the common source of supply.

The decisions of this court (C. C. Julian Oil & Royalties Co. v. Capshaw et al., supra; Quinton Relief Oil & Gas Co. v. Corporation Commission et al., 101 Okla. 164, 224 P. 156, and Pawhuska Oil & Gas Co. v. City of Pawhuska, 47 Okla. 342, 148 P. 118) and of the Supreme Court of the United States (Champlin Refining Co. v. Corporation Commission et al., supra; Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 584, 44 L. Ed. 729; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160;

and Walls v. Midland Carbon Co., 254 U. S. 300, 41 S. Ct. 118, 65 L. Ed. 276) have definitely settled the question as to the police power of the state.

Those decisions have definitely determined that House Bill No. 168, supra, is repugnant neither to the due process clause nor the equal protection clause of either the federal or state Constitutions; that the act is not in conflict with section 57, art. 5, of the state Constitution; that the act does not confer nondelegable powers on the Corporation Commission, and that the act is not void in toto for uncertainty.

Notwithstanding the decisions cited, it is herein contended by the petitioners that House Bill No. 168, supra, is unconstitutional and void.

By the provisions of section 15, art. 9, of the Constitution, a Corporation Commission was created. Sections 16 and 17 of that article relate to the qualifications of the members thereof.

By the provisions of section 18 of the article, the Corporation Commission was vested with power and authority and charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in the state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies.

It will be noted that the application of the provisions of section 18, supra, is limited to transportation and transmission companies. Those terms, as defined in section 34 of the article, include any company, corporation, trustee, receiver, or any other person owning, leasing, or operating, for hire, a railroad, street railway, canal, steamboat line, and also any freight car company, car association, express company, sleeping car company, car corporation, or company, trustee, or person in any way engaged in such business as a common carrier over a route acquired in whole or in part under the right of eminent domain, or under any grant from the government of the United States, and any company, receiver, or other person, owning, leasing, or operating for hire any telegraph or telephone line.

The term "corporation" or "company," as defined in section 1 of the article, includes "* * * all associations and joint stock companies having any power or privileges, not possessed by individuals, and exclude all

municipal corporations and public institutions owned or controlled by the state; * * *" and the term "company" is defined by section 18(b) of the article to include "* * * associations and joint stock companies having any power or privileges not possessed by individuals, and include all corporations except municipal corporations and public institutions owned or controlled by the state."

By the provisions of section 19, art. 9, of the Constitution, in all matters pertaining to the public visitation, regulation, or control of corporations, and within the jurisdiction of the Commission, the Corporation Commission was granted the power and authority of a court of record, to administer oaths, to compel the attendance of witnesses, and the production of papers, to punish for contempt any person guilty of disrespectful or disorderly conduct in the presence of the Commission while in session, and to enforce compliance with any of its lawful orders or requirements by adjudging and by enforcing its own appropriate process, against the delinquent or offending party or company (after it shall have been first duly cited, proceeded against by due process of law before the Commission sitting as a court, and afforded opportunity to introduce evidence and to be heard, as well against the validity, justness, or reasonableness of the order or requirement alleged to have been violated, as against the liability of the company for the alleged violation), such fines or other penalties as may be prescribed or authorized by the Constitution or by law, and the Corporation Commission was thereby vested with authority to impose fines, not exceeding $500, as the Commission may deem proper, or such sum in excess of $500, as may be prescribed or authorized by law, upon any corporation failing or refusing to obey any valid order or requirement of the Commission, within a reasonable time, not less than ten days, as shall be fixed in the order.

None of those provisions are applicable to corporations or individuals engaged in the production of oil or gas, and, in the absence of other provisions of the article, we would be compelled to hold that the Corporation Commission has no constitutional authority over either corporations or individuals engaged in the production of oil or gas.

However, by the provisions of section 19 of the article, the Legislature was authorized to vest the Corporation Commission with additional powers and to charge it with other duties (not inconsistent with the Constitution), in connection with the visitation, regulation, or control of corporations, or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the state has the right to prescribe the rates and charges in connection therewith, or with the assessment of the property of corporations, or the appraisement of their franchises, for taxation, or with the investigation of taxation generally.

While the Constitution did not vest the Corporation Commission with authority of visitation, regulation, or control over corporations not engaged in the transportation or transmission business, by the provisions last referred to, it authorized the Legislature to vest the Corporation Commission with additional powers and to charge it with other duties, not inconsistent with the Constitution, in connection with the visitation, regulation, or control of corporations not engaged in the transportation or transmission business, including corporations conducting any business where the state has the right to prescribe the rates and charges in connection therewith. That authority has been exercised in numerous instances.

The legislative authority to vest the Corporation Commission with additional powers and to charge it with other duties, not inconsistent with the Constitution, was conferred by the provisions of section 19 of the article. The number of that section is important to a discussion of the issues presented herein by reason of the provisions of section 35 of the article.

Section 35, art. 9, of the Constitution is as follows:

"After the second Monday in January, nineteen hundred and nine, the Legislature may, by law, from time to time, alter, amend, revise, or repeal sections from eighteen to thirty-four, inclusive, of this article, or any of them, or any amendments thereof: Provided, That no amendment made under authority of this section shall contravene the provisions of any part of this Constitution other than the said sections last above referred to or any such amendments thereof."

The comprehensive language used conferred upon the Legislature the power to "alter, amend, revise, or repeal sections from 18 to 34, inclusive, of this article, or any of them, or any amendments thereof." There were but two limitations upon that constitutional authority granted to the Leg-

150

islature; one, that the authority might not be exercised until after the second Monday in January, 1909, and the other, that no amendment made under authority of the section shall contravene the provisions of any part of the Constitution other than sections 18 to 34, inclusive, supra. Had the Legislature attempted to exercise its constitutional authority to alter, amend, revise, or repeal any or all of the sections named, in terms, there could have been no question as to the authority so to do.

The petitioners contend that the provisions of House Bill No. 168, supra, are not within the authority granted to the Legislature by the provisions of section 35, art. 9 of the Constitution, for the reason that those provisions contravene the provisions of article 4 of the Constitution, and we have for consideration the question of whether or not the provisions of that act contravene the provisions of article 4 of the Constitution.

If the proviso to section 35, supra, had been limited to an inhibition against the contravention of the provisions of the Constitution, a different conclusion would have been necessary, but such is not the proviso. The inhibition therein contained is against the contravention of the provisions of any part of the Constitution other than sections 18 to 34, inclusive, of the article. By the provisions of section 35, supra, the Legislature was authorized to alter, amend, revise, or repeal sections from 18 to 34, inclusive, supra. after the second Monday in January, 1909, even though the alteration, amendment or revision thereof contravened the provisions of sections 18 to 34, inclusive, supra.

Article 4, supra, consists of one section and is as follows:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

While it is stated therein that the powers of the government shall be divided into three separate departments, that statement is inaccurate. By the provisions of section 1, art. 5 of the Constitution, the people reserved to themselves certain legislative powers. By the provisions of section 1, art. 7, of the Constitution, a portion of the judicial power of the state was vested in the

Senate, sitting as a court of impeachment. By the provisions of article 9 of the Constitution, legislative, executive, and judicial powers were conferred on the Corporation Commission. The powers of the government of the state were not divided into three separate departments, as stated in article 4, supra, and that fact is disclosed by other provisions of the Constitution.

The subject of the first part of article 4, supra, is powers of government. The subject of the second part is departments of government. While it is provided in the second part of the article that the legislative, executive, and judicial departments of government shall be separate and distinct, and that neither shall exercise the powers properly belonging to either of the others, those statements are coupled with an exception, as follows, "except as provided in this Constitution." One of the exceptions is the Corporation Commission, which, by the provisions of article 9, supra, was vested with legislative, executive and judicial authority. The provision that the legislative, executive, and judicial departments of government shall be separate and distinct and that neither shall exercise the powers properly belonging to either of the others, by reason of the exception in article 4, supra, is not applicable to the Corporation Commission.

Such has been the construction placed on article 4, supra, by the legislative enactments and executive approvals thereof, extending the field of operation of the powers of the Corporation Commission to include motor busses, cotton gins, and other industries, not included within the constitutional designation of the field over which the Corporation Commission's powers may operate.

Such is the effect of the decision in Ex parte Tindall, 102 Okla. 192, 229 P. 125, wherein attention was called to the exception in article 4, supra, as including the creation of an agricultural board and the authorization of the creation of a banking board. Therein it was said:

"But our Constitution has not only recognized the necessity for administrative boards, but has made express exception to the rule of distinction between the powers of the three major departments, and expressly created the Corporation Commission and specifically endowed it with certain powers, charged it with certain duties, and authorized the Legislature to confer additional duties and powers upon it, thereby removing the question of invalid delegation of powers. Article 9, Constitution of Oklahoma."

Such is the effect of the decision in Pioneer Telephone & Telegraph Co. v. State, 40 Okla. 417, 138 P. 1033, wherein the act of February 10, 1913 (chapter 10, Session Laws 1913), entitled

"An Act conferring authority upon the Corporation Commission to adjust controversies between parties growing out of refunds for public service; to require all refunds to be turned over to the Commission; to determine the amount of refund and to whom due; and declaring an emergency"

—was held to be valid and that the authority therein granted to the Corporation Commission was a valid legislative enactment within the discretion of the Legislature, although it extended the field of operation of the judicial power granted to the Corporation Commission by the Constitution. Commenting on the same act, this court, in Chicago, R. I. & P. Ry. Co. v. Brown, 105 Okla. 133, 232 P. 43. said: ·

"By section 35 the Legislature was given the power to alter, amend, revise, or repeal any of the sections above referred to after the 2nd Monday in January, 1909, but the Legislature has never abrogated or limited any of the powers conferred by these sections, but, on the contrary, has enlarged those powers. By the act of 1913, sections 3470 and 3471, Comp. Stat. 1921, the Commission was vested with the power of a court of record to determine the amount of any refund due because of any charges in excess of the lawful rate in force at the time the charge was made, or above what might thereafter be declared to be the legal rate which should have been applied, and was given authority to render judgment for the amount of such overcharge which should become a lien upon the property of the corporation making such overcharge, and was given power to make collection and make payment to the parties to whom due."

Such was the statement of this court in St. Louis & S. F. R. Co. v. State, 26 Okla. 62, 107 P. 929, wherein this court said:

"Section 35, art. 9, of the Constitution provides that after the second Monday in January 1909, the Legislature may by law, from time to time, alter, amend, revise, or repeal sections from 18 to 34, inclusive, of said article, or any of them or any amendment thereof. By reason of this provision, it is within the power of the Legislature to enact, at any time after the second Monday in January, 1909, a law changing the powers of the Corporation Commission as defined by section 18, supra; and the authority of said Commission that, before the second Monday in January, 1909, was paramount to the authority of the Legislature to legislate upon any subject within the authority of the Legislature, is since that date subject to the superior authority of the Legislature to legislate upon any subject of which the Commission is given jurisdiction; but section 35 can have no operation in this case, because the general law, to wit, the act of the territorial Legislature of March 15, 1905, was enacted and extended as a general law of the state (if it was extended) prior to the time the Legislature is authorized by said section 35 to alter, amend, or repeal those sections of the Constitution which confer upon the Corporation Commission its powers, and define the character of such powers. At the time said act became a law of the state, the power of the Commission over the subject-matter of the act was supreme."

That language was the language of Mr. Justice Hayes, who spoke for the court and who had been a member of the Constitutional Convention. The reasoning in St. Louis & S. F. R. Co. v. Zalondek, 28 Okla. 746, 115 P. 867, with reference to chapter 18, Session Laws 1907-08, is to the same effect. Therein it was said:

"Said act was approved on May 20, 1908, and having become effective prior to the second Monday in January, 1909 (sec. 35, art. 9, of the Const.), may not operate so as to alter, amend, revise or repeal any of the provisions of article 9 of the Constitution."

Such was the effect of the decision of this court in Oklahoma Gin Co. v. State, 63 Okla. 10, 158 P. 629, wherein this court said:

"It is next urged that if said section is construed as a grant of power, then the power thus delegated to the Corporation Commission is legislative, and hence in conflict with Const. art. 4, sec. 1. It is contended that if said section gives the Commission power to determine whether a particular business, not theretofore controlled by the state, can thenceforth be controlled by it, then such 'is a delegation of legislative power of a character not delegable,' under the Constitution. It is no argument against the constitutionality of the act that it delegates to the Commission legislative power, for the reason that while article 4, sec. 1, provides:

" 'The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct and neither shall exercise the powers properly belonging to either of the others'

"—the Constitution in establishing the Commission itself otherwise provided, as held in St. Louis & San Francisco R. Co.

v. Williams, 25 Okla., at page 665, 107 P. at page 430, where we said:

" 'The Corporation Commission, by virtue of the provisions of article 9 of the Constitution, is invested with extraordinary powers, being authorized to exercise not only legislative, but also executive, administrative, and judicial powers.'

"* * * But let this be a delegation by the Legislature to the Commission, of whatsoever kind of power it may, the same is expressly authorized. Const. art. 9, sec. 18, provides:

" 'The Commission shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in the state, in all matters relating to the performance of their public duties and their charges therefor, * * * and to that end * * * shall, from time to time, * * * enforce against said companies * * * such rates, charges,' etc.

"Now, while the company in question is neither a transportation nor transmission company, from this delegation of power we catch the idea of what power is intended to be delegated by later constitutional provisions invoked as applicable to the company in question. In the large, this is a delegation of power to the Commission, if properly raised in a proper case before it, to hear and determine the question of whether or not the company whose rates and charges are the subject of inquiry is a transportation or transmission company; this is a delegation of judicial power. When that question is determined in the affirmative, by the Commission as a result of a hearing before it, the matter of fixing the rates or charges for that company by the Commission is an exercise of legislative power. And so where, in the next section, the Constitution, after clothing the Commission, in all matters pertaining to the control of corporations within the state, with the power of a court of record, and further providing that 'the Commission may be vested with such additional powers and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law in connection with the * * * control of corporations,' it means that the Legislature was authorized to designate corporations other than transportation and transmission companies and extend the jurisdiction of the Commission over them also, in all matters pertaining to the regulation of their rates, charges, etc., and which the Legislature did by section 13, supra, by prescribing by law, in effect, that whenever any corporation places its business in such a position that the public acquires an interest in its use, and then enters into a combination in restraint of trade, the Commission is vested with judicial power to hear and determine whether such is true;

and, if so, to exercise legislative power and proceed and fix its rates and charges, as in the case of transportation and transmission companies"

—and held:

"We are therefore of opinion that the powers granted by the section under construction were properly delegated, and did not conflict with article 4, sec. 1, of the Constitution, as contended."

While that decision was reversed by the Supreme Court of the United States in Oklahoma Gin Co. v. State, 252 U. S. 339, the reversal was not upon the ground that the Corporation Commission did not have jurisdiction, but upon the ground, as stated in the decision in the companion case (Oklahoma Operating Co. v. Love, 252 U. S. 331), a decision involving the control by the Corporation Commission of laundry companies, that the penalty provision was void for the reason that no provision was made for review. That court said:

"It does not follow that the Commission need be restrained from proceeding with an investigation of plaintiff's rates and practices, so long as its findings and conclusions are subjected to the review of the district court herein."

It will be noted that the effect of those decisions was to enjoin the Corporation Commission from enforcing penalties provided by those acts and the orders of the Corporation Commission, and that there is nothing therein from which it can be concluded that that court intended to hold that the Corporation Commission did not have legislative, executive, and judicial power. Those powers, in effect, were approved by that court by the statement:

"Indeed, such investigation and the results of it might with appropriateness be made a part of the final proofs in the cause."

In the case appealed from this court, that court said:

"This case was argued and submitted with Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, decided this day. For the reasons set forth in the opinion in that case the provisions concerning penalties for disobedience to an order of the Commission was void because it deprived the company of the opportunity of a judicial review."

Such is the effect of the decision of this court in Oklahoma Light & Power Co. v. Corporation Commission, 96 Okla. 19, 220 P. 54, with reference to the regulation by the Corporation Commission of the ice business. Therein this court said:

"It is our conclusion that the Corporation Commission has jurisdiction under the statutory law of this state to determine the necessity of regulating the price of ice where the evidence establishes that the business comes within the statutory characteristics of section 11032. Therefore, the application for writ of prohibition is denied."

The Circuit Court of Appeals of the Tenth Circuit, in Southwest Utility Ice Co. v. Liebmann, New State Ice Co. v. Same, 52 Fed. (2d) 349, had before it the provisions of chapter 147, Session Laws 1925 (sections 3684 to 3691, inclusive, O. S. 1931). That court said:

"Prior to the enactment of chapter 147, supra, the Corporation Commission from time to time by order had regulated the price of ice, and its authority so to do had been upheld by the Supreme Court of Oklahoma, in Oklahoma L. & P. Co. v. Corporation Commission, 96 Okla. 19, 220 P. 54. The Corporation Commission, under powers granted by prior statutes, had also made and enforced regulations governing the manufacture and sale of ice, to insure honest weights, pure and wholesome ice, annd adequate delivery service. By chapter 147, supra, the Legislature undertook to grant the additional power to regulate by limiting the number of persons who might engage in the ice business in a given territory."

The decision in that case was to the effect that the manufacture of ice is not so affected with the public interest as to justify the fixing of prices at which the commodity shall be sold or the limitation of the number of persons who may engage in such business in a given territory. The legislative, executive, and judicial power of the Corporation Commission was not determined therein. The decision in no wise operates to defeat the authority of the Corporation Commission to make and enforce regulations governing the manufacture and sale of ice and to insure honest weights, pure and wholesome ice, and adequate delivery service.

An appeal was taken from that decision to the Supreme Court of the United States. The decision of that court is reported in 76 L. Ed. 747, by which decision the judgment of the Circuit Court of Appeals was affirmed. There is nothing therein which in any way holds that the Corporation Commission may not exercise legislative, executive, and judicial power. The only provision of the act stricken down by that decision was that requiring a license by persons, firms, or corporations engaged in the business. We quote from the language of Mr. Justice Brandeis as follows:

"The statute under review rests not only upon the facts just detailed, but upon a long period of experience in more limited regulation dating back to the first year of Oklahoma's statehood. For 17 years prior to the passage of the Act of 1925, the Corporation Commission under section 13 of the Act of June 10, 1908, had exercised jurisdiction over the rates, practices, and service of ice plants, its action in each case, however, being predicated upon a finding that the company complained of enjoyed a 'virtual monopoly' of the ice business in the community which it served. The jurisdiction thus exercised was upheld by the Supreme Court of the state in Oklahoma Light & P. Co. v. Corporation Commission, 96 Okla. 19, 220 P. 54. The court said, at p. 24 of 96 Okla., 'The manufacture, sale and distribution of ice in many respects closely resemble the sale and distribution of gas as fuel, or electric current, and in many communities the same company that manufactures, sells, and distributes electric current is the only concern that manufactures, sells, and distributes ice, and by reason of the nature and extent of the ice business it is impracticable in that community to interest any other concern in such business. In this situation, the distributor of such a necessity as ice should not be permitted by reason of the impracticability of any one else engaging in the same business to charge unreasonable prices, and if such an abuse is persisted in, the regulatory power of the state should be invoked to protect the public.' See, also, Consumers Light & P. Co. v. Phipps, 120 Okla. 223, 251 P. 63.

"By formal orders, the Commission repeatedly fixed or approved prices to be charged in particular communities; required ice to be sold without discrimination and to be distributed as equitably as possible to the extent of the capacity of the plant; forbade short weights and ordered scales to be carried on delivery wagons and ice to be weighed upon the customer's request; and undertook to compel sanitary practices in the manufacture of ice and courteous service of patrons. Many of these regulations, other than those fixing prices, were embodied in a general order to all ice companies, issued July 15, 1921, and are still in effect. Informally, the Commission adjusted a much greater volume of complaints of a similar nature. It appears from the record that for some years prior to the Act of 1925 one day of each week was reserved by the Commission to hear complaints relative to the ice business."

We find nothing in the decision of that court that can be construed as an intention to strike down the power of the Corporation Commission so exercised.

Without regard to whether or not the ice business is a business in which the public has an interest, the production of oil and gas is such a business, for in the Champlin Case, supra, it was said:

"Every person has the right to drill wells on his own land and take from the pools below all the gas and oil that he may be able to reduce to possession, including that coming from land belonging to others, but the right to take and thus to acquire ownership is subject to the reasonable exertion of the power of the state to prevent unnecessary loss, destruction, or waste. And that power extends to the taker's unreasonable and wasteful use of natural gas pressure available for lifting the oil to the surface, and the unreasonable and wasteful depletion of a common supply of gas and oil to the injury of others entitled to resort to and take from the same pool."

Such was the decision of this court in Quinton Relief Oil & Gas Co. v. Corporation Commission, supra, wherein this court had for construction the provisions of chapter 197, Session Laws 1915 (sections 7920 to 7931, inclusive, C. O. S. 1921; sections 11533 to 11544, inclusive, O. S. 1931). Therein this court said:

"We are clearly of the opinion that the act of 1915, supra, is a valid act. The power of the Commission to regulate the burning of natural gas for the production of carbon black or soot in enforcing the conservation policy of the state is definitely settled in favor of the state in the case of Walls v. Midland Carbon Co., 254 U. S. 300."

With reference to the rule stated by this court in Oklahoma Gin Co. v. State, supra, and Oklahoma Light & Power Co. v. Corporation Commission, supra, this court said:

"This court, in the cases of Oklahoma Gin Co. v. State, 63 Okla. 10, 158 P. 629, and Oklahoma Light & Power Co. v. Corporation Commission, 96 Okla. 19, 220 P. 54. sustained the constitutionality of section 8235, Revised Laws 1910 (section 11032, Comp. Stat. 1921), conferring upon the Corporation Commission the power to determine whether the nature or extent of any business is such that the public must use the same. Second, the power to determine whether the services offered by any business, or the consideration by it given or taken, or the commodities bought or sold therein are offered or taken by purchase or sale in such manner as to make it of public consequence, or in such manner as to affect the community at large as to supply, demand, or price or rate thereof. Third, it gives the Corporation Commission the power to control said business, and to prescribe all its practices, prices, rates, and charges."

The contention of the petitioner in that case was that the orders of the Corporation Commission were void and of no force and effect for the reason that the Corporation Commission was without jurisdiction to enter them. The orders complained of prohibited the sale of natural gas for use in the manufacture of carbon black. The contention of the petitioner was disapproved by this court, with the statement that the act vested the Corporation Commission with power to determine under a particular given state of facts whether or not there was a wasteful utilization of gas, and that "It was within the constitutional power of the Legislature to vest the Corporation Commission with this jurisdiction." That act was enacted at the same session of the Legislature as the act in question.

Such is the effect of the decision of this court in Love v. Boyle, Chief Mine Inspector, 72 Okla. 300, 180 P. 705, wherein House Bill No. 136 of the Sixth Legislature (chapter 207, Session Laws 1917) was held to deprive the Chief Mine Inspector of the state of the power theretofore exercised by him with reference to oil and gas. Under the provisions of that act, the Corporation Commission was authorized to create and establish an oil and gas department, to prescribe rules and regulations for plugging abandoned oil and gas wells, to direct and supervise the plugging thereof, to inspect oils and liquid products of petroleum before the same are consumed, used, or sold, or offered to be sold or disposed of to merchants, consumers, or other persons within the state, and to appoint, with the approval of the Governor, inspectors for that purpose. That act extended the legislative and executive powers of the Corporation Commission over a field not embraced within the provisions of the Constitution. This court denied the application of the Chief Mine Inspector for an injunction against the Corporation Commission, and the basis of the decision was that the powers theretofore granted by legislative enactment to the Chief Mine Inspector had been conferred upon the Corporation Commission by the provisions of the act in question.

We can see no reason why the jurisdiction of the Corporation Commission conferred by the provisions of chapter 197, Session Laws 1915 (sections 7920 to 7931, inclusive, C. O. S. 1921; sections 11533 to 11544, inclusive, O. S. 1931) and the jurisdiction conferred upon the Corporation Commission by the provisions of chapter 207, Session Laws 1917 (sections 8013 to 8017, inclusive, C. O. S. 1921; sections 3669 to 3673, inclusive, O. S. 1931) should be upheld, and the jurisdiction of the Corporation Commission conferred by the act in question should be denied. The Corpor-

ation Commission has the jurisdiction conferred upon it by the act in question.

By the provisions of the Constitution, hereinbefore referred to, legislative, executive, and judicial powers was conferred upon the Corporation Commission, and the Corporation Commission was authorized to exercise the three powers. While the field over which the powers of the Corporation Commission could be exercised was limited by the terms of the grant of power in the Constitution, the Legislature was authorized by the Constitution to alter, amend, revise, or repeal the constitutional provisions constituting the grant of power and limiting that field of operation. For that reason the decisions from other states cited by the petitioners are neither persuasive nor controlling, in the absence of a showing that the Constitutions of the states in which those decisions were rendered contained the broad grant of legislative power which is contained in section 35, supra. It is said that the Constitution of Virginia is similar to our Constitution, but that statement is erroneous.

The petitioners rely upon certain statements made by this court in its decisions to the effect that the jurisdiction of the Corporation Commission is only that conferred upon it by the Constitution. In a broad sense that statement is correct, but it is easily misunderstood unless the fact is kept in mind that the Constitution authorizes legislative changes as provided by section 35, supra. A clearer statement of the rule is that the jurisdiction of the Corporation Commission is limited to that conferred upon it by the Constitution and the legislative enactments pursuant to and in conformity therewith. The statement made by this court, that there is no constitutional provision authorizing the Corporation Commission to take or exercise control over property other than that of public service corporations, was made without reference to the provisions of section 35, supra, and the legislative enactments pursuant thereto.

We agree with the petitioners in the statement that:

"Surely the people having the right to create their own government could limit in their Constitution the power to be exercised by this Commission over their persons and property, and could likewise restrict the Legislature in the extension or enlargement of such power"

—but it is likewise true that the people, having the right to create their own gov-

ernment, by their Constitution could grant to the Legislature the power to alter, amend, revise, or repeal the constitutional provisions limiting the field over which the powers conferred upon the Corporation Commission by the Constitution could be exercised. They did that by including in the Constitution the provisions of section 35, supra. While it was not necessary for them to confer upon the Corporation Commission legislative, executive, and judicial power, they thought it advisable to do so. They also thought it advisable to permit the Legislature, after the second Monday in January, 1909, to "alter, amend, revise, or repeal" the constitutional provisions limiting the field over which the powers granted to the Corporation Commission might be exercised.

The control of the natural resources of the state of Oklahoma and the prevention of the wasting thereof are as essentially necessary as the control of the corporations engaged in the transmission or transportation business, and we cannot say that the Legislature was without authority to place the control of those natural resources within the Corporation Commission, to be exercised under the legislative, executive, and judicial powers conferred upon the Corporation Commission by the people through the adoption of the Constitution.

It is said that the provisions of article 9, supra, which is entitled "Corporations," is limited to corporations, and that, in the adoption of the Constitution containing that article, the people did not intend to confer upon the Corporation Commission any power over individuals. The Constitution must be tested on the basis of the terms employed. Section 34 of the article defines transportation and public service corporations, and in each of the definitions persons are included. In Hine v. Wadlington, 26 Okla. 389, 109 P. 301, Mr. Justice Williams, speaking for the court, sustained the power of the Corporation Commission over an individual who was operating a telephone line.

The petitioners contend that the Legislature did not attempt to confer upon the Corporation Commission the power, jurisdiction, and authority sought to be exercised by it. An examination of the petition and relation for prohibition discloses an allegation that the Corporation Commission had made and promulgated certain orders whereby it attempted to regulate the taking and marketing of crude oil from the Oklahoma City field, and that the petitioners had been

cited to appear before the Corporation Commission for a hearing on a complaint of alleged violation of those orders. It was further alleged that the Corporation Commission, if not prohibited from so doing by this court, intended to and would conduct a hearing on the complaint, try the petitioner on the charges made therein, and make orders to close the wells of the petitioner.

We have then for consideration the question of whether or not the Legislature has exercised the authority granted to it by the provisions of section 35, art. 9, of the Constitution, by altering, amending, or revising sections 18 to 34, inclusive, of that article.

We are of the opinion and hold that, by the enactment of House Bill No. 168, supra, the Legislature altered, amended, and revised the provisions of sections 18 to 34, inclusive, of article 9, supra, and that the provisions of that act are operative, notwithstanding any provision of sections 18 to 34, inclusive, supra, to the contrary.

It does not appear from the record that the Corporation Commission is attempting to do anything that may not be reviewed by this court on appeal from any order made by the Corporation Commission. In an application for a writ of prohibition to prohibit the Corporation Commission from taking jurisdiction in a cause pending before it, where the complaint states facts sufficient to confer jurisdiction on the Commission, it will be presumed that the Commission will act within the jurisdiction conferred by law, even where the principal relief prayed for may be beyond its control. Atchison, T. & S. F. Ry. Co. v. Corporation Commission, 22 Okla. 106, 98 P. 330.

Under the facts shown by the record in this case, the application for a writ of prohibition should be denied. Jones v. Pugh, 130 Okla. 291, 267 P. 272, and Kinney v. Vernor, Judge, 136 Okla. 166, 276 P. 750.

The petition for a writ of prohibition is denied.

LESTER, C. J., and CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., and MOORE, Special J., concur. CLARK, V. C. J., concurs in judgment and dissents as to reasons given. RILEY, J., absent. HEFNER, J., disqualified.