## H. F. WILCOX OIL & GAS CO. v. BOND et al.

No. 26131.    June 18, 1935.

Rehearing Denied Sept. 10, 1935.

Armstrong & Murphy, for appellant.

Edwin Dabney and George Selinger, for appellee Corporation Commission.

R. H. Hudson and R. B. F. Hummer, for Phillips Petroleum Company.

R. M. Williams and W. P. McGinnis, for Indian Territory Illuminating Oil Company.

L. G. Owens and James A. Veasey, for Carter Oil Company.

OSBORN, V. C. J.   On April 12, 1934, the H. F. Wilcox Oil & Gas Company, hereinafter referred to as applicant, filed an application with the Corporation Commission, hereinafter referred to as Commission, in which it was sought to obtain an increased allowable for five of its wells producing from the Wilcox zone, in the Oklahoma City field.

On June 15, 1934, the Commission dismissed the application for lack of jurisdiction. Mandamus proceedings were instituted in this court, and on July 31, 1934, a writ was issued directing the Commission to grant a hearing on the application. (H. F. Wilcox Oil & Gas Co. v. Paul Walker et al., 168 Okla. 543, 35 P. [2d] 269.)

Thereafter a hearing was had beginning October 11, 1934, and on November 27, 1934, an order was entered by the Commission denying the relief sought by applicant. On January 10, 1935, the Commission denied applicant's motion for a review and recon-

sideration, and appeal was perfected to this court.

In the application it is alleged that on April 15, 1933, the Commission entered its order No. 6252, directing the taking of potentials in the Wilcox zone during the month of April, 1933, the same to be effective as of April 1, 1933. That prior thereto a number of operators owning wells in the Wilcox zone had shot their wells with nitroglycerin or other high explosive, and thereby greatly increased the flow of their wells and obtained high potentials; that the average decline of the wells in the zone between November, 1931, and April, 1933, was approximately 50 per cent., but the potentials of the wells shot on the average decreased but 12.6 per cent. It is further alleged that by journal entry No. 2221, issued in cause No. 11523, the Commission prohibited the shooting of any wells in the Oklahoma City field without first having obtained a permit granted by the Commission; that shortly thereafter a number of applications were filed requesting permits to shoot wells, and, although said applications have been heard, the Commission has failed to render a decision on any of them; it is further alleged that the order refusing an operator the right to shoot his wells, or requiring a permit to do so, is illegal and void as beyond the power of the Commission, and is discriminatory, in that it operates to the advantage of those operators who shot their wells prior to the taking of the April, 1933, potential, and to the disadvantage of those operators who did not shoot their wells. It is further alleged that the advantage of an increased potential caused by shooting the wells continued through 1933 and 1934; that while applicant could have shot its wells prior to April, 1933, and thereby secured the increased potential, it is not now advisable to do so, for the reason that water is fast encroaching and to shoot the wells at this time would aggravate this condition, and that the bottom hole pressure has so decreased that in all probability the wells would not clean themselves out after the shooting. Applicant prays for an adjusted potential on its five wells, based on the percentage increase in the potential of the wells of those producers who shot the same prior to April, 1933.

A protest was filed by various other companies owning and operating leases and wells in the Wilcox zone of the Oklahoma City field.

At the conclusion of the hearing the Corporation Commission made extensive findings of fact. Among other things, it found that there were more than 500 wells producing from the Wilcox zone in the Oklahoma City field, and that prior to April 5, 1933, approximately 22 wells producing from said zone had been shot, and that the shooting of said wells had not resulted in discrimination against applicant's wells. It further found that to attempt to adjust the potentials and allowables of applicant's wells as prayed in its application would result in discrimination against other operators in said zone, and, in order to protect the equal and correlative rights of the numerous operators in said zone, the application for adjusted potentials should be denied.

The applicant takes issue with the various findings of fact by the Commission and asserts that said findings are contrary to the evidence. We do not deem it necessary to discuss each of the findings separately with a view of determining whether or not they are supported by the evidence, but, as we view it, it is necessary to determine whether under all of the allegations and evidence applicant is entitled to the relief sought.

Chapter 131, Session Laws 1933, which became effective April 10, 1933, is a comprehensive legislative act dealing with the prevention of waste in the production of oil. Section 2 of said act prohibits the production of oil or gas under such conditions as constitute waste, and authorizes the Corporation Commission to make rules, regulations, and orders for the prevention of such waste.

Section 4 of said act provides as follows:

"Whenever the full production of any common source of supply of oil in this state can only be obtained under conditions constituting waste, then any person having the right to drill into and produce oil from any such common source of supply may, except as otherwise authorized and/or in this act, provided, take therefrom only such proportion of all oil that may be produced therefrom without waste as the production of the well or wells of any such person bears to the total production of such common source of supply. The Commission is authorized to regulate the taking of oil from any or all such common sources of supply within the state of Oklahoma so as to prevent the inequitable or unfair taking from any common source of supply, and to prevent unreasonable discrimination in favor of any such common source of supply against another."

Section 22 of said act, in part, provides:

"The Commission shall have the power to order closed, and by the proration umpire, his assistants and deputies, to close any well or wells which have been overproduced or which are being overproduced in violation of this act and/or of the orders, rules and regulations of the Commission and/or to order that the production of oil from such well or wells shall be reduced, until such condition of overproduction of any such well or wells has been equalized so that the operator of such well or wells shall not be permitted to take therefrom a greater amount of oil than is permitted under the provisions of this act and/or the orders, rules and regulations of the Commission, made in pursuance of the provisions of this act; and may issue and enforce other orders to regulate the flow and production of oil and gas in such common source of supply for the purpose of preventing or stopping violations of its orders, rules or regulations, prescribing proration of production or ratable taking of oil in any common source of supply. * * *"

Applicant in this case alleges discrimination in that certain wells were shot prior to April 10, 1933, and by reason thereof their various potentials were greatly increased, and since applicant's wells were not shot, the wells which were permitted to be shot have taken more than their equitable share of oil from the common source of supply to the detriment and disadvantage of applicant. Applicant seeks an increased potential to be figured on the basis of the average increase of the wells which were shot prior to April, 1933. Obviously, unless there was discrimination in favor of the shot wells, then applicant is without basis for its complaint.

This cause was previously before the court on application for a writ of mandamus to require the Commission to grant applicant a hearing on the application. State ex rel. v. Walker, 168 Okla. 543, 35 P. (2d) 269. The writ was granted and the Commission required to grant a hearing. By way of direction to the Corporation Commission it was therein said:

"It having been determined by the Corporation Commission that oil wells could not be permitted to produce oil at full capacity from the Wilcox zone without waste, it then became the duty of the Commission, in all cases as nearly as possible, to permit each well to ratably produce oil therefrom. With a great many oil wells producing oil from such common supply it was undoubtedly difficult to establish the exactly equitable and ratable taking by each producer. We are thoroughly satisfied that the Commission had proceeded with an earnest desire to accomplish the exact requirement of the law, but there is a continued duty upon the Commission to so conduct the management and control of the production of oil under the act as to continue the ratable taking by all of the wells as fairly as may be ascertained and permitted, with due regard to any condition or circumstances that might result in an unintended discrimination against any producer. And if any rule or action of the Commission, though well founded in purpose, should in operation result in discrimination against a producer, then upon application of such producer the Commission would have the authority to remove and correct such discrimination. It is within the contemplation of the act, chapter 131, S. L. 1933, that overproduction might result and be observed in the case of certain wells, and that such overproduction should thereafter be equalized by reduced production. It was likewise within the contemplation of the act that certain wells might be shown to have been inequitably restricted or unratably restricted as to production. The resulting underproduction or shortage of the production that should have been allowed might be compensated or adjusted or equalized by future permitted overproduction to an equalizing extent. The application of the plaintiff to the Corporation Commission was based upon such an interpretation of the act, and by that application the plaintiff sought to have the Commission determine whether or not a discrimination had resulted against the plaintiff causing it to suffer an underproduction or improperly restricted production, and seeking to have the same equalized by adjusted potential with a resultant allowance of overproduction or production in addition to that previously allowed in order to grant plaintiff a ratable taking of oil from its wells which, with the wells of other producers, tap the common source of supply."

Before superimposing the law on the facts as disclosed by the record in this case, we shall briefly allude to the legal history of the rights of persons in the production of oil. It is a rule of property in this state, except as modified by a proper exercise of the police power, that a landowner or an owner of oil and gas mining rights who himself develops his land, or a lessee for oil and gas purposes, becomes the owner of all the oil and gas that he may produce from his wells, whether the oil and gas originally inhabited his own land or were drained from neighboring lands. Rich v. Doneghey, 71 Okla. 204, 177 P. 86; Champlin Ref. Co. v. Corporation Commission, 286 U. S. 210; Russell Petroleum Co. v. Walker, 160 Okla. 145, 15 P. (2d) 114; I. T. I. O. Co. v. Larkins, 168 Okla. 69, 31 P. (2d) 608; Wilcox

Oil & Gas Co. v. Walker, 168 Okla. 355, 32 P. (2d) 1044. This theory of the law resulted in so many gross inequities, and such competitive cupidity, and such destructive waste of natural resources as to require the state, in the exercise of its police power, under some circumstances, to modify this far-reaching rule. It is now well settled that the state has an interest, paramount to the owners, in the potential production of oil from the underground reservoirs, and that within reasonable limits it is the duty of the state to preserve to the owners of oil producing lands, where production is had from a common source of supply, the natural forces and elements necessary for the ultimate production of the maximum amount of oil by the owners producing from said common source of supply. Champlin Refining Co. v. Corporation Commission, supra; Russell Pet. Co. v. Walker, 160 Okla. 145, 15 P. (2d) 114; People v. Associated Oil Co. (Cal.) 294 P. 717.

With this recognition of the paramount right of the state to restrict production of oil to prevent waste, a consequent duty to prevent inequitable taking from a common source of supply necessarily arose. In exercising this function the state necessarily was compelled to consider and safeguard the correlative rights and obligations of the operators in a common pool. By the passage of chapter 131, S. L. 1933, the state kept constantly in mind such correlative rights and obligations. By the very nature of oil wells they differ not only in their quantities of production, but in their peculiar qualities. A well of small capacity may be drilled in close proximity to a well of great capacity, depending among other things upon the location of the well on the structure, the porocity of the sand, and many other operative factors. Apparent inequities necessarily may follow. The fundamental principle behind the exercise of the sovereign power by the state was to reduce these inequities to a minimum and to require so far as possible under certain conditions the taking of oil by operators from a common source of supply equitably, taking into consideration the individuality of the particular wells.

Applicant contends in this case that certain producers, by reason of having shot their wells prior to April, 1933, have secured an unfair advantage. Applicant did not shoot its wells on which it claims an adjusted allowable, nor, after the Commission put into effect its order restricting the right to shoot wells without a permit, did it make application for such permission. Applicant does not contend that the wells so shot were in such proximity to its wells for which it seeks an adjusted allowable as to cause its wells to be directly drained by said shot wells. Applicant contends, however, that it produces from the same common source of supply as the wells that are shot. But the record in this case discloses that said wells are located, with the exception of one well, a considerable distance from a large majority of the wells that were shot. The record further discloses that in the main the wells which were shot were located in a hard sand formation, whereas the wells of applicant are located in a sand porous in its nature, and there is scientific testimony to the effect that wells located in a hard sand formation, generally speaking, when shot, will increase production, but that wells located in a soft or porous sand formation, generally speaking, when shot, will not increase production, and many actually decrease in production.

Applicant's theory is that, applying a general average of increase of the wells shot to its own wells, it will be entitled to a great increase of allowables retroactive as of April, 1933. Applicant overlooks the fact, however, that there were only 19 wells that were shot producing from the Wilcox zone and that there are approximately 500 wells producing from said zone which have not been shot. Applicant's theory of its rights in this matter is highly speculative, and does not take into consideration the correlative rights of the other operators of the 500 wells which have not been shot.

We hold that the Corporation Commission upon proper hearing is authorized to adjust any unfair or inequitable taking from the common source of supply by operators in a producing oil field. But under the record in this case the applicant has failed to show that the Commission erred in refusing to grant the relief sought.

The order of the Commission is sustained.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. WELCH, J., absent.