## STERLING REFINING CO. et al. v. WALKER et al.

No. 24766. Opinion Filed Aug. 16, 1933.

As Corrected on Denial of Rehearing Sept. 12, 1933.

Sid White, Harry O. Glasser, and N. Scarritt, for petitioners.

Edwin C. Dabney, Proration Attorney (Hayes, Richardson, Shartel, Gilliland & Jordan, of counsel), for respondents.

BUSBY, J. This is an original action commenced in this court on the 8th day of

June, 1933. Petitioners, Sterling Refining Company, a corporation, and the Refiners Production Company, a corporation, request a writ of prohibition against the Corporation Commission of the state of Oklahoma and the officials of this state upon whom our statutes impose the duty of administering and enforcing the Oil and Gas Conservation Act. The petitioners also seek injunctive relief against the defendants, to prevent them from enforcing, in an administrative and legislative capacity, House Bill No. 481, passed by the Fourteenth Session of the Legislature in regular session and referred to as the Oil Conservation Act (Sess. Laws 1933, ch. 131, p. 278).

The request for injunctive relief as an incident to the writ of prohibition arises out of a recognition by the petitioners of the limited purpose of the writ of prohibition. While the restricted scope of the remedy has not always been recognized, it is peculiarly appropriate for the purpose of preventing an inferior court, board, commission, or official which is exercising judicial or quasi judicial powers, from exceeding its jurisdiction. It is not ordinarily appropriate for the purpose of controlling or preventing an official, or board, from exercising ministerial, administrative, or legislative functions. Since it has been held that the Corporation Commission is, in the enforcement and administration of the Oil and Gas Conservation Act, exercising administrative and legislative powers as well as judicial authority (Russell et al. v. Walker et al., 160 Okla. 145, 15 P. (2d) 114; H. F. Wilcox O. & G. Co. v. State, 162 Okla. 89, 19 P. (2d) 347), the petitioners request that the attempted judicial act of the Corporation Commission be prevented by writ of prohibition, and that the Commission be restrained by injunctive process from exercising administrative and legislative powers.

Petitioners assert that they may rightfully claim both classes of relief under the authority of State ex rel. Trapp v. Chambers, 96 Okla. 78, 220 P. 890. It is not claimed that the incidental request for injunctive relief enlarges the scope of inquiry by this court, nor do we think such a claim would be tenable if made. The inquiry in this case will, therefore, be limited to matters properly cognizable by this court on application for a writ of prohibition.

This proceeding, in effect, resolves itself into a controversy between the petitioners, who own an integrated system for the producing, transporting, refining, and marketing of crude petroleum and its products, and who assert the right to the unrestricted use thereof, on the one hand, and the Corporation Commission, a regulatory body, on the other hand, which, under the Oil Conservation Act, supra, is undertaking to impose restrictions and limitations on the use of the producing property belonging to the petitioners.

The petitioners plead that they are interrelated and completely integrated companies; that they have the same president, same board of directors, and approximately the same stockholders; that the stockholders of the Refiners Production Company own 70 per cent. of the stock of the Sterling Refining Company, and, further, that the Refiners Production Company owns two producing wells in the Oklahoma City field, which wells have a combined daily potential production of 22,000 barrels. They plead that the Sterling Refining Company owns and operates a refinery situated near said wells; that the two companies have a selling and marketing organization which conduct a large business throughout various sections of the United States, supplying customers with the products of said refinery; that the purpose of the organization of the two companies was to produce, refine, and market oil and its by-products. That by reason of an order of the Corporation Commission the allowable production of their wells has been reduced to about 11,000 barrels per month, and that they are now only permitted to actually run about 450 barrels of oil a day to their refinery; that this amount is insufficient to operate their refinery and to supply their marketing system already built up. That the Corporation Commission, acting under and by virtue of House Bill No. 481, is destroying their business, and that said bill violates both the provision of the state and federal Constitutions.

They further contend that the orders promulgated by the Corporation Commission under and by virtue of the terms of said act were for the purpose of price-fixing. In support of the averments contained in their petition, the petitioners have filed in this court as exhibits to their petition transcripts of testimony introduced before the Corporation Commission on various hearings held before that body.

Before discussing the legal questions involved, however, we deem it advisable to review briefly the history of the proceedings that were had before the Corporation Commission previous to the time that the

application for a writ of prohibition was filed in this court. After House Bill No. 481 became effective under the laws of this state, the Corporation Commission, after proper notices, conducted a hearing for the purpose of determining the amount of oil that could be produced from the Oklahoma City field without waste. Gauges of wells in the Oklahoma City field, including petitioners', were taken, and an order made determining the allowable production of each well. The petitioners did not take any appeal from the orders made in connection with these previous hearings, but on the 7th day of June, 1933, they appeared before the Corporation Commission with an application styled by them an "Application for Emergency Relief." This application in substance pleaded the interrelation of the two petitioners, incorporated, the establishment of an integrated system of producing, transporting, refining, and marketing of oil and the products thereof, and stated that the orders theretofore made by the Commission had limited the amount of their allowable production from a producing property to such an extent that it would not supply the capacity of their refinery, or the demands of their marketing system. They further asserted that the other operators in the field would not sell them oil and that they were willing and wished to make a nomination for oil sufficiently to supply their sales. They demanded that in the event they could not procure the oil elsewhere, they be permitted to overproduce their wells to the extent of the demand created by their refinery and their marketing facilities, notwithstanding any unratable taking of oil from the source of common supply that might result from such overproduction. They did not, however, suggest a willingness later to produce the wells at less than the allowable rate in order to make up for any previous overproduction, nor do they suggest to this court their present willingness to do so. When they made their demand for emergency relief, it was suggested by the Corporation Commission that other producers might be interested in the making of an order based on said demand, and that 10 days' notice should be given before such hearing should be had. The petitioners refused to comply with this suggestion, and demanded that an immediate hearing be had upon their application without notice to others interested therein. Petitioners then insisted that the order prayed for by them be forthwith issued. Upon the failure of the Commission to comply with their demand, this original proceeding for a writ of prohibition was in-

stituted in this court on the following day. This is not an appeal from an order of the Corporation Commission seeking a review thereof.

The demand made by the petitioners is neither new nor novel. A similar contention was made before the Commission and in this court by the Champlin Refining Company. It challenged the validity and objected to the manner of enforcing the previous proration law of this state. That company was also an integrated company, having refining and marketing facilities capable of disposing of more oil than the company was then being permitted to produce under the proration law. In the reported decision, Champlin v. Corporation Commission, 51 F. (2d) 823 (affirmed by the Supreme Court of the United States, 286 U. S. 210), it was said in disposing of this contention:

"Counsel for plaintiff assert that, since it is able to take oil in excess of the amounts permitted by such orders and to transport and market the same without the commission of any waste, a denial of its right so to do amounts to a deprivation of its property in contravention of the Fourteenth Amendment. The plaintiff is a so-called integrated producer; that is, it owns both producing wells, pipe lines, refineries, and marketing facilities. Other producers have no pipe line, refinery, or marketing facilities, and if they should be permitted to produce in excess of market demands, they would have to store the same, and this would result in waste. On the contrary, if plaintiff should be permitted to take all the oil it could utilize without waste, it would encroach upon the rights of other producers not having pipe line, refinery and marketing facilities, to take from the common source of supply. Under these circumstances, we are of the opinion that the limiting of the taking to the market demands is a reasonable regulation for the prevention of waste and the protection of the co-equal rights of the owners of land over such pool. 'Where the public interest is involved, preferment of that interest over the property interest of the individual * * * is one of the distinguishing characteristics of every exercise of the police power which affects property.' Miller v. Schoene, 276 U. S. 272, 280, 48 S. Ct. 246, 247, 72 L. Ed. 568, and cases there cited."

Fair dealing and common justice, as well as the statutory provisions, demanded that, if the state is to exercise its power to limit the production of oil from a common source of supply, it must likewise prevent the different producers from taking an unratable portion of the oil therefrom. We do not

mean that the Commission may not in an emergency permit a single producer to temporarily overproduce, but such permission, if granted, should be temporary in character and the period of overproduction must be followed by a period of underproduction until the overproduction has been equalized. This is indispensable in order that the requirements of the law providing for a ratable taking between producers be complied with. If the petitioner Sterling Refining Company elects to take from the Oklahoma City field, or any one or more of the common sources of supply in the Oklahoma City field, any gross amount, and it appears that it can and will take the amount designated without waste, then the amount which it elects to take should be considered and provided for by the Commission in determining the total amount which it shall decide may be produced from such common source of supply. It may then purchase all of the allowable from the Refiners Production Company wells and purchase the balance of its nominations from the other producers within the total amount allowed by the Commission to be produced without waste. **But the Refiners Production Company may not take an unratable and disproportionate portion of the oil from the common source of supply in order to furnish from its own wells the total amount necessary to supply the Sterling Refining Company.**

In the proceedings had in connection with the emergency application filed by the petitioners, the Commission refused to act until an appropriate notice had been given. Many other operators were and are interested in the Oklahoma City field and in the oil to be produced from each of the several common sources of supply therein. In the absence of statutory provisions making notice a prerequisite to a decision, the policy of the law and the orderly and proper determination of the rights of parties render the giving of a proper notice the better plan of procedure. We are unable to say in this case that the Corporation Commission committed an abuse of discretion in refusing to act without preliminary notice.

We will now consider the principal question raised by the petitioners, to wit, the constitutionality of House Bill No. 481, as presented through their proceedings for a writ of prohibition.

The office of such a writ is to prevent an inferior judicial tribunal from asserting jurisdiction which it does not have, or exercising jurisdictional powers not granted to it by law, or making an unauthorized application of judicial power in a case otherwise cognizable by it. Russell et al. v. Walker, et al., supra; Payne, Co. Treas., v. Speakman, 96 Okla. 170, 221 P. 9. Thus the only purpose served by the writ is to prevent the inferior judicial tribunal from acting without or in excess of its jurisdiction. It cannot properly be used to review errors committed by the inferior tribunal. Busey v. Crump, 108 Okla. 73, 233 P. 714; State v. Huston, 27 Okla. 606, 113 P. 190; Russell et al. v. Walker et al., supra.

Obviously, if the Oil Conservation Act, passed by the 14th Legislature, is invalid, when considered as a whole, the Corporation Commission of this state, and the various officials acting in conjunction therewith, are without lawful authority to regulate the production of oil in accordance with its provisions. Conversely, if when considered as a whole the act is not offensive to the requirements of the Constitutions of the United States and the state of Oklahoma, the law is valid and may be enforced unless some separable provision thereof is invalid. In the case of Champlin Refining Co. v. Corporation Commission, 76 L. Ed. 1062, the Supreme Court of the United States said:

"The unconstitutionality of a part of an act does not necessarily defeat or affect the validity of its remaining provisions. Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law."

In this connection it is important to note that the Legislature's intent as to the effect of partial invalidity of the act is clearly expressed in section 48 thereof, which provides that the invalidity of any part or portion of the act shall not affect the remaining valid portions thereof. The effect of this provision is to create the presumption that omitting unconstitutional portions of the act, if any, the remaining portions would have been enacted by the Legislature, Champlin Refining Co. v. Corporation Commission, supra.

Bearing in mind the foregoing fundamental principles governing the constitutionality of legislative enactments, portions of which are, or may be, invalid, it will be seen that the unconstitutionality of any particular part or portion of the act in question is not important in this proceeding unless: First, such invalid provision is inseparable and

indivisible from the remainder of the act and its invalidity destroys the entire act; or, second, the provision of the particular invalid portions of the act are being asserted or enforced by the inferior tribunal for the purpose of regulating the property or production of the petitioners. Thus, any separable portion of the act in question, even though invalid, is not an important factor in this case unless the petitioners are being adversely affected by the enforcement or application thereof. Before passing to a consideration of the particular provisions which the petitioners say are invalid, and the invalidity of which they urge destroys the entire act, let us examine the entire act. In the main it resembles the previous conservation acts of this state, sections 11565 to 11574, inclusive, O. S. 1931. The ends which it is calculated to accomplish are the same. In fact, many of its provisions are brought forward from the previous statutes of this state. House Bill No. 481 is, however, more explicit and contains a number of added features, some of which are attacked by petitioners in this proceeding.

Considering the act as a whole, it provides, in substance, that, when the full production of oil and gas from any common source of supply cannot be accomplished without waste, the production may be limited by appropriate orders of the Corporation Commission. It also provides that when production from a common source of supply has been restricted or limited, the different producers entitled to take therefrom shall take only their proportionate and ratable share in accordance with the potential production of their well or wells. (Certain minor exceptions to this proportionate taking are outlined in the act, but need not be analyzed here.)

Judicial decisions of the courts of last resort on the question of the constitutionality of proration statutes have uniformly and without exception held that a state may, in the interest of the conservation of its natural resources and as a proper exercise of its police power, provide, by legislation within constitutional limits, for the regulation of the production of oil and gas in order to prevent waste. This court so held in the case of C. C. Julian Oil & Royalties Co. v. Capshaw et al., 145 Okla. 237, 292 P. 841. The Supreme Court of the United States also approved this character of legislation in the case of Champlin Refining Co. v. Corporation Commission, supra. In fact, the courts have generally adopted

the theory that proration is necessary in order to prevent the waste of oil and gas energy, and that gas energy should be preserved and properly utilized in order to extract all of the oil from oil-bearing sands. This theory recognizes the interest of the state in the proper utilization of all its resources. After all, such theory is particularly proper in Oklahoma because oil and gas constitute to a large degree the basic wealth of the state This basic wealth and basis of taxation and income should not be wasted. The waste of any natural resource that cannot be replaced should be, and is against public policy. The case of C. C. Julian Oil & Royalties Co. v. Capshaw, et al., supra, is also authority for the proposition that the Corporation Commission of this state is a proper agency or tribunal upon which to confer the power and authority to enforce and administer the conservation law, and in which to vest the necessary authority to promulgate rules and regulations essential to the practical administration of the law. In the subsequent decisions of this court the power and authority of the Corporation Commission in this respect has been continually recognized and reiterated. H. F. Wilcox Oil & Gas Co. v. State, supra; Russell et al. v. Walker et al., supra. An act, however, is not necessarily constitutional merely because it falls within the general scope of the legislative power of the state. It, or some of its provisions, may conflict with some particular portion of the Constitution.

The petitioners assert that this act must fall because of sections 29 and 30 thereof. They strenuously urge that these sections are "void as in conflict with article 4, section 1, of the state Constitution." The challenged sections are closely associated with section 28, and it is obvious that the intention of the law-making body was to provide by the three sections mentioned a comprehensive plan for review and consideration of the orders of the Corporation Commission on appeal to this court. Those sections (omitting portions not material to the questions herein involved) read as follows:

Section 28: "No collateral attack shall be allowed upon orders, rules and regulations of the Commission made hereunder, but the sole method of reviewing such orders and inquiring into and determining their validity, justness, reasonableness, or correctness shall be by appeal from such orders, rules or regulations to the Supreme Court. On appeal every such order, rule, or regulation shall be regarded as prima facie valid, reasonable, and just. No court of this state,

except the Supreme Court, and it only on appeal, as herein provided, shall have jurisdiction to review, reverse, annul, modify or correct any order, rule, or regulation of the Commission within the general scope of its authority herein, or to enjoin, restrain, or suspend execution or operation thereof, provided that writs of mandamus and prohibition shall lie from the Supreme Court to the Commission in all cases where such writs, respectively, would under like circumstances lie to any inferior court or officer."

Section 29: "Any person affected by any legislative or administrative order of the Commission shall have the right at any time to apply to the Commission to repeal, amend, modify, or supplement the same. Such application shall be in writing and shall be heard as expeditiously as possible after notice of the hearing thereon shall have been given in the manner provided by section 14 of this act. An appeal shall lie to the Supreme Court from any order made by the Commission in any such proceedings or from the refusal of the Commission to make any order petitioned for therein, in the same manner and within the same time in which other appeals are authorized to be taken by the provisions of this act, and, on any such appeal, the Supreme Court may affirm the order of the Commission, or the Commission's action in refusing to make the order petitioned for, or may itself make the order which the Commission should have made, or remand the cause to the Commission with directions to make such order as the Supreme Court may determine should have been made."

Section 30: "In the manner now provided by law for taking appeals to the Supreme Court from orders, rules or regulations of the Commission affecting transportation and transmission companies, appeals may be taken to the Supreme Court from any order, rule or regulation made, issued or promulgated by the Commission under the provisions of sections 1 to 13, inclusive. (a) by the Attorney General, or (b) by the proration attorney, or (c) by the proration umpire, on behalf of the state; or by any person aggrieved by such order, rule or regulation appealed from. On such appeal the **Supreme Court shall have power to determine the validity, the reasonableness and justice of such** order, rule or regulation, and should the court find from the record that the order, rule, or regulation appealed from is incorrect, unreasonable, unjust, or insufficient in any particular, **it shall amend, modify or supplement such order, rule or regulation so as to make the same correct, reasonable, just or sufficient, or shall substitute therefor such order, rule or regulation** as in the court's opinion is warranted by the record, is reasonable and just, and will effect the purposes and intent of this act. On such appeals no order, rule, or regulation shall be reversed and remanded to the Commission for a new trial thereon or for the taking of additional testimony unless the court shall find that the evidence introduced before the Commission is insufficient to enable the court to determine and make a proper order, rule, or regulation or that the party appealing did not have lawful notice of the hearing before the Commission, or that the Commission refused to receive competent evidence offered by the party appealing, which, if true, would leave the order, rule or regulation appealed from without substantial basis in fact. * * *"

It is asserted by the petitioners that the last two sections above are void for the reason that they vest legislative and administrative power in the Supreme Court, and that the observance of the sections mentioned and the provisions thereof by this court would be an unconstitutional encroachment by the judiciary upon legislative and executive function of the government. An examination of the foregoing statutory provisions discloses that they confer upon this court two classes of power which may be exercised on appeal. They provide that the orders may be reviewed for the purpose of determining their validity, reasonableness, and justice. The power thus conferred is essentially judicial and is a proper and salutary grant of authority to the judiciary. They also undertake to vest upon this court the power to promulgate such rules or orders as the court may see fit in lieu of the orders of the Commission. The exercise of this latter power by this court would be an encroachment upon the legislative and administrative departments of the government. It not only enables us to determine what the law is, but undertakes to clothe us with authority to determine within certain limitations what the policy of the law shall be.

Our attention is directed to section 1 of article 4 of the Constitution of Oklahoma. It provides:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

This constitutional provision is but a restatement of the fundamental principles embodied in the American idea of government; a division and classification of the powers

of government into legislative, executive, and judicial, and the exercise of each class of powers by a separate branch of government. It recognizes the governmental theory that each department of government serves as a check upon each of the others. The successful operation of a government of this character demands that each department recognize the supremacy of each of the others within its proper field, and that neither undertake to dominate or control the activities of either of the others when acting within the proper limit of its power. Nor should one department encroach upon the field of the other. However, it is essential to good government that harmony and efficiency prevail, and to a certain extent there has been a blending of the powers of government, and in some instances a combination thereof within a limited field in one commission or board. This is illustrated by the power conferred by our Constitution upon the Corporation Commission in connection with the regulation and control of transportation and transmission companies, as well as by legislation such as is now under consideration. We are in accord with the view that such legislation should be jealously watched and confined within proper limits, or it may result in the breaking down of the barriers between the departments of government which make each department a check upon the other and which prevent the centralization and dictatorial power in one department thereof. However, we cannot completely ignore nor lightly brush aside the manifest necessity of vesting in boards and commissions sufficient power to secure a practical and efficient administration of the law and the accomplishment of the purposes and functions of government. Complex and ever changing conditions, such as confront us in connection with the administration of an oil and gas conservation act, render impossible the practical enforcement of laws which are so rigid in their requirement that they cannot bend to meet the varying conditions which may arise. One of the most practical methods which has been devised for the accomplishment of such ends is the vesting by the Legislature, in a commission charged with the administration of the law, the power to promulgate rules and regulations. Generally such rules or regulations are administrative in their character, though sometimes they may and do arise to the dignity of legislative enactment. Though the courts have sustained this delegation of legislative authority, they have done so only when it is of a secondary

character, and it has usually been consistently held that it is not within the power or province of a Legislature to delegate authority which is primarily legislative in its character, and that the power delegated must be within well-defined limits prescribed by the Legislature and only incidental to the carrying out of the general legislative intent as expressed by the terms of the act.

Practical considerations have no doubt played an important part in causing the courts to sustain the validity of legislation combining the powers of government in one board or commission. Such powers vested are administrative in their character, and there is no practical or legal reason to vest them in the judiciary.

The respondents urge that the contention made by the petitioners is settled by the previous decisions of this court. They refer particularly to Oklahoma Gin Co. v. State, 63 Okla. 10, 138 P. 629; Quinton Relief O. & G. Co. v. Corporation Commission, 101 Okla. 164, 224 P. 156, and Russell et al. v. Walker et al., supra. These cases hold that the Corporation Commission of this state may be vested with powers in addition to those specifically conferred upon it by sections 18 to 34, inclusive, of article 9 of the Constitution of the state. The last case (Russell et al. v. Walker et al.) based this power to confer additional power on the Corporation Commission largely upon the provisions of section 35 of article 9 of the Constitution. That provision grants to the Legislature the power to amend or repeal sections 18 to 34, inclusive, provided such amendment does not conflict with the other provisions of the Constitution. Respondents reason that, since section 23 of article 9 contains a provision relating to transmission and transportation companies almost identical with portions of section 30 of the act in question, and which constitutional provision confers upon the Supreme Court, in connection with appeals in the particular class of cases therein referred to, the power to exercise administrative and legislative functions, and that, since section 35 of article 9, supra, has been construed as authority to empower the Legislature to extend the jurisdiction of the Corporation Commission in connection with the Oil Conservation Act, it follows that it is sufficient authority to empower the Legislature to enlarge the administrative and legislative jurisdiction of the Supreme Court which is conferred by section 23, supra. We are of the opinion that this view

is unsound. The conferring of legislative or administrative powers on an administrative tribunal is not necessarily offensive to the Constitution, even in the absence of a specific provision therein authorizing the delegation of such power. State of Florida v. Atlantic Coast Line Ry. Co., 56 Fla. 617, 47 So. 969, 32 L. R. A. (N. S.) 639. The ordinary rule, of course, is that legislative power cannot be delegated, but this is subject to the well-recognized exception that the Legislature is authorized to outline by general law the general scope and purpose of the laws and delegate to an administrative commission the power to promulgate administrative rules and regulations. These rules may be, and are in many instances, legislative in their character. The problem under consideration has on many occasions confronted the federal courts and involved a construction of the United States Constitution. The United States Supreme Court and inferior federal courts have at all times recognized that, while it is contrary to the federal Constitution to delegate legislative powers, strictly speaking, yet when the legislative power sought to be delegated is in defined limits and for the purpose of accomplishing the proper administration of the law, the general effect of which has been stated in appropriate legislative provisions, the delegation is not contrary to the provisions of the Constitution. It was said in the case of Louisville & N. R. Co. v. Interstate Commerce Commission, 184 Fed. 118:

"In pursuing this inquiry it is of prime importance that we apprehend clearly the nature of the power on which the order rests; and for greater clearness it is well to emphasize the fact that the particular power in question is one which relates to the prescription of rules and regulations for future conduct, and it is not a power for affording remedies for past misconduct or other violations of legal rights. As has been pointed out in the opinions of the Supreme Court, the power thus defined is legislative in its nature; and it is well settled upon a long series of decisions by that court in the development of this subject that, when this legislative power concerns the administrative affairs of the government, it may be delegated to an officer, or a board already existing or created for the purpose, and, when so delegated, the power may be as fully exercised as the Legislature might have exercised it, subject to any limitations imposed by the Legislature itself. When a subject requires legislation for the regulation of future conduct, but the objects of it are so diffuse and variable that they cannot be distinctly apprehended and comprised in the ordinary terms of legislative classification, it is not unusual to prescribe general rules, if such do not already exist, and delegate the power to apply those rules to the varying circumstances which may arise and give occasion for control. The necessity of legislation in such form justifies its adoption; and it is not obnoxious to the Constitution, in that it delegates legislative power. Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253; Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; Buttfield v. Stranahan, 192 U. S. 476, 24 Sup. Ct. 349, 48 L. Ed. 525; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523."

Such delegated legislative power, when conferred upon an inferior board or tribunal, becomes and is a part of the administrative functions of government. It does not follow, however, that such powers, independent of judicial matters, may be conferred upon the judiciary. Section 35 of article 9, supra, while it vests in the Legislature power to amend the previous sections of article 9 of the Constitution, contains a specific limitation of that power in that it provides that such amendment or change shall not be contrary to the other provisions of the Constitution. It was obviously not the intention of the makers of the Constitution to use the Corporation Commission as a conduit to transform the Supreme Court of this state from a judicial body into an administrative body. It was the purpose of section 1 of article 4 of the Constitution to prevent such a result. In connection with the federal Constitution, and the interpretation thereof by the federal courts of the United States, it has been repeatedly held that the Congress cannot confer upon the Supreme Court of the United States the power to exercise either legislative or administrative functions. Federal Radio Com. v. Nelson Bros. Bond & Mortgage Co., 53 S. Ct. 627, 77 L. Ed. ___; Federal Radio Com. v. General Elec. Co., 281 U. S. 464. In the case of In re County Com'rs of Counties Comprising 7th Judicial District, 22 Okla. 435, 98 P. 557, this court held that by reason of the provisions of article 4, sec. 1, legislative powers could not be delegated to or conferred upon the Supreme Court of Oklahoma. But when otherwise provided in the Constitution, as in the case of transportation and transmission companies, it is within the proper province of this court to exercise the administrative or legislative functions provided for in section 23, art. 9, of the Constitution. The blending of these powers in the Corporation Commission is not in itself offensive to the federal Con-

stitution. Prentiss v. Atlantic Coast Line Ry. Co., 211 U. S. 224, 53 L. Ed. 158. However, there is no specific provision of our Constitution which authorizes the conferring of legislative or administrative power upon this court in connection with the regulation of oil and gas under the Conservation Act. We, therefore, conclude that those portions of sections 29 and 30 of the act in question which undertake to confer upon this court the power to promulgate rules and regulations upon review of rules and regulations of the Corporation Commission are in violation of the provisions of section 1 of article 4 of the state Constitution.

Our conclusion that portions of sections 29 and 30 of the Conservation Act under consideration are in conflict with the constitutional provisions of the state does not, however, necessarily render the remaining portions of those two sections invalid. We hold invalid only those portions of the two sections which undertake to confer upon this court legislative and administrative powers by permitting it to promulgate rules in lieu of the rules promulgated by the Corporation Commission.

The petitioners say, however, that "the effect of the unconstitutionality of sections 29 and 30 is to make void the entire proration law." We do not concur in this conclusion. Eliminating the particular provisions of those sections, there still remains in the sections themselves those portions conferring upon the Supreme Court judicial powers to review the orders of the Corporation Commission. The power thus conferred does not in any way affect or conflict with the provisions of our state Constitution, and they provide a comprehensive method to review and determine the validity of the orders of the Corporation Commission. The offensive provisions are clearly separable, as we have previously pointed out, and it is to be presumed that the Legislature would have enacted the remainder of the act had they not been incorporated therein.

The petitioners also assert that House Bill No. 481, supra, is unconstitutional for the reason that it denies to them the right to have the legislative orders of the Commission tested in any court of the state. In support of their contention they particularly emphasize the case of Oklahoma Operating Co. v. Love, 252 U. S. 335, wherein the Supreme Court of the United States held, in substance, that where an appeal could only be taken by first violating the orders of the lower tribunal in such a manner as to pro-

voke contempt proceedings, and then the validity of the orders or law was challenged on appeal from the punishment assessed in such contempt proceedings, an adequate method of judicial review was not provided. This case is not applicable to the situation presented in the case at bar. It must be remembered that all of the provisions of sections 29 and 30 are not unconstitutional. The valid portions of those sections provide for a judicial review of the orders of the Corporation Commission on appeal from that body. An adequate and proper provision is made in the act itself for a judicial consideration and review of any order of the Corporation Commission made in connection with the enforcement or administration of the act in question.

Petitioners further contend that the act in question is also unconstitutional because it confers upon the Corporation Commission the authority to fix the price of oil, and they further assert that the orders promulgated by the Corporation Commission under the authority of this Conservation Act were for the purpose of establishing or regulating the price. It has been universally held that unless a business is so affected with a public interest in the sense that the regulation of the price thereof is essential to the protection of the public, it is beyond the authority of the state or of the nation to regulate the price of the commodity. Businesses warranting regulation by price-fixing are usually monopolistic in character. Williams v. Standard Oil Co., 278 U. S. 235, 73 L. Ed. 287; New State Ice Co. v. Liebmann, 52 Sup. Ct. 371.

The oil and gas business does not fall within this class, and thus legislation for the purpose of establishing or fixing the price cannot properly be enacted. Peoples Petro. Producers v. Smith, 1 Fed. Supp. (D. C.) 361.

An examination of the entire act under consideration discloses that no portion thereof undertakes to specifically confer upon the Corporation Commission the power to fix or determine the price at which oil or the products thereof may be sold. It is contended, however, that the use of the term "economic waste," in the definition of waste set forth in section 2 of the act, has the practical effect of authorizing the Commission to promulgate rules and regulations for the purpose of fixing the price of oil. A similar provision is contained in section 3 of the previous Conservation Act. That act was considered by the Supreme Court of the United States in the case of Champlin Ref. Co. v. Corporation Com., supra. That court

refrained from passing upon the validity of that particular section or the effect of incorporating therein the term "economic waste" as a part of the definition of waste. It did, however, state that, inasmuch as the particular orders then under consideration were not shown to have been promulgated for the purpose of fixing prices, their validity was not affected by the peculiar wording of the section referred to. In effect, it was held that the incorporation of this provision in the statute did not affect the validity of the act when taken as a whole, nor the validity of orders promulgated by the Corporation Commission unless such orders were established with the view to fixing prices. The petitioners assert that the orders under consideration restrict the allowable production to be produced from a source of common supply to an amount which was less than the market demand for the oil from that source of supply, and less than the amount that could have been produced therefrom without physical waste. An examination of the orders under consideration does not support this contention. The petitioners, however, have filed in this case a transcript of certain evidence taken before the Commission on hearings on other demands, not their own, upon which evidence it is asserted that these orders were based. They take the position that this evidence discloses that the production was so restricted by the orders under consideration. Assuming that such a construction could be placed upon the evidence, we do not deem it proper in the character of proceedings which we are now entertaining to review this evidence for the purpose of determining whether or not the Commission made an erroneous finding based thereon. The field of our inquiry in this case is limited to a determination of the jurisdictional questions of whether or not the Commission was clothed with authority to enter orders of this character at all. The appropriate method for reviewing erroneous decisions on the part of the Corporation Commission is by appeal to this court and review thereof. From an examination of the orders herein, we cannot say there has been in the proceedings before the Corporation Commission any undertaking on the part of that body to control the price of oil. The nearest approach to any showing in the record was a statement made by Chairman Paul Walker of the Commission, in the course of the hearing, that he considered the price element an important factor in determining the permissible production. This was an erroneous statement, because the act in question did not justify it. This statement, however, was not incorporated in any orders. It is a familiar law in this state that the statement of a court made during the process of a hearing may not be used for the purpose of impeaching the judgment or the decision made. The question of price-fixing is not properly before us in this proceeding. But, in order to clarify the law and prevent confusion in the future administration thereof, we deem it advisable to state that the price at which oil may be produced with profit to the operator is not a proper factor to be considered in determining the amount of oil that may be produced without waste. The power of the state to regulate, control, and limit the production of oil from any common source of supply is for the purpose of preventing physical waste thereof. It recognizes an interest in the state in the conservation of a great natural resource. For the proper accomplishment of this end, oil conservation laws may be enacted. But the accomplishment of this end may not be used as a cloak or guise to control the price of oil. Of course, the limitations of the production for the purpose of preventing physical waste may affect the price. However, we do not regard this more or less natural effect as rendering the act in question or the administration thereof invalid. It renders orders objectionable only when and if price-fixing is taken into consideration as an element in fixing the amount of allowable production from a common source of supply.

The petitioners further complain that a general agreement existed among some of the operators in the Oklahoma City field to fix and control the price of oil, and that in furtherance of this scheme or design these operators procured the enactment of the Proration Act in question. It is not the duty of this court to determine or inquire into the methods used in obtaining the passage of an act in passing upon the constitutionality of that act. Petitioners further contend that the same operators now exercise a dominating influence over the Corporation Commission and control the administration of the law. We cannot say there is competent proof before us which establishes the truth of these assertions. No doubt some individuals and corporations interested in the production of oil may undertake to secure advantage of any law passed to further their own ends. It is the duty of the Corporation Commission to administer the law in such a manner that unjust, unfair, and illegal advantages cannot be had. While hasty and ill-considered action should not be taken by the Commission, yet the rights of the various operators should be speedily determined and

unreasonable delay should be avoided. The rapidly changing conditions of the oil fields demand a proper and prompt administration of the law. The friendliness or unfriendliness of any operator to the Proration Law should have no weight in the determination of his rights. On the other hand, operators must observe the requirements of the law and the orders made by the Corporation Commission. If dissatisfied with orders or decisions of that tribunal, the aggrieved party should promptly apply to this court for an adjustment of this grievance. This court cannot indorse nor place the stamp of approval upon the act of an operator who violates or ignores the provisions of the law or the orders of the Corporation Commission, and then takes the law in his own hands, and when his unlawful acts are discovered, appeals to the court for relief for the first time. Nor will it indorse the act of the Corporation Commission if it unnecessarily delays hearings to subvert the ends of justice.

The validity of the act in question is likewise assailed on the theory that certain penalty sections therein contained are invalid. This proceeding does not involve an application or attempted application of those sections. They are, therefore, not properly before us for consideration at this time unless they are inseparable portions of the act. Clearly those provisions are separable under the rule announced by the Supreme Court of the United States in the case of Champlin v. Corporation Commission, supra, and need not be passed upon at this time.

We have encountered some difficulty in determining all of the questions intended to be raised by the petitioners due to the failure on their part in one of the briefs herein filed to observe the requirement of rule 10 of this court, which requirement is, "that the contention of the parties must be set forth in separate specifications and the argument and authorities in support of each specification must follow the statement thereof." We have, however, undertaken to pass upon and dispose of all of the principal questions raised by the briefs notwithstanding the failure to observe the requirement of the rule.

Reverting to that portion of petitioners' complaint specifically complaining because the Corporation Commission refused to make an order allowing them to take sufficient oil from their own wells to run their refinery: They charge a conspiracy among the operators producing from the same common source of supply to control the price of oil, and to

prevent them from purchasing on the open market or to produce from their own wells an adequate supply for their refinery. They allege that these facts were known or should have been known by the Corporation Commission; and, furthermore, that the Commission failed to consider their demand in determining the market demands and the proper allowable for the Oklahoma City pool. If, after a proper hearing on these issues, the Commission should make an improper order, or fail to make a proper one, and if this order were appealed from, this court would promptly review the record and give petitioners the relief to which they would be entitled. But petitioners are here seeking a writ of prohibition, and the exhibits of records taken in other hearings do not justify such findings or the granting of such relief on our part. Our inquiry now is necessarily limited herein to a determination of jurisdictional questions as to the authority of the Commission to enter orders of the character complained of by virtue of the statute in question. In a case where the Commission has jurisdiction, but renders an erroneous decision, petitioners' remedy is by appeal to this court for a review of such decision.

It has not been our purpose in passing upon the constitutionality of House Bill No. 481 to decide upon or interpret the validity of each and every word, phrase, or paragraph therein contained. Other questions, which it is impossible to anticipate at this time, or which if anticipated would not be within the proper scope of this opinion, involving the validity or the interpretation and construction of particular provisions of the act, may arise in the future.

In determining the issues involved in this case, we have decided that the Conservation Act, commonly referred to as House Bill No. 481, when considered in its entirety, is constitutional. We have declared that the particular provisions of sections 29 and 30 which undertake to vest in this court legislative and administrative powers violate the provisions of section 1 of article 4 of the state Constitution. We have also decided that the Corporation Commission in determining the permissible production of oil from a source of common supply may not properly consider the price at which the oil may be sold. In this connection, however, we cannot say or determine in this action that the particular orders under consideration reflect that price was considered in determining the permissible production from the common source of supply. We have decided

that the Corporation Commission has jurisdiction to administer the proration law and promulgate proper orders in connection therewith. Also, that in promulgating the orders complained of the Corporation Commission did not exceed its jurisdiction. It follows that the writ of prohibition prayed for should be denied.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, OSBORN, and WELCH, JJ., concur. ANDREWS, McNEILL, and BAYLESS, JJ., absent.