## STATE ex rel. HUDDLESTON v. BOND et al.

No. 26297. . May 28, 1935.

Bookstore & Reed and Jarman & Brown, for plaintiff.

Edwin C. Dabney, Proration Attorney (R. M. Williams and R. B. F. Hummer, of counsel), for defendants.

GIBSON, J. This is an original action in this court by the state on relation of Lon Huddleston against Reford Bond, Jack Walton, and A. S. J. Shaw, as members of and constituting the State Corporation Commission, in which relator seeks a writ of prohibition to prohibit the Corporation Commission from enforcing, as against him, its order No. 8674, and particularly section 11 thereof, which is as follows:

"11. All underproduction to the credit of any well in the Wilcox zone as of 7 o'clock a. m., on the 1st day of April, 1935, shall be canceled and charged off by the umpire; provided that, underproduction accumulated to the credit of any well voluntarily closed in under the provisions of paragraph 2, section 7 of order No. 8220, by reason of having a gas/oil ratio of 7,500 cubic feet, or more, of gas per barrel of oil, shall not be canceled."

Order No. 8674 was made and promulgated by the defendants on March 25, 1935. Relator alleges that he is the owner of an oil well known as Huddleston, Inc., No. 1 in the Oklahoma City field, located on lots 1 to 6, inclusive, block 4, Hill's subdivision of Fletcher Heights addition to Oklahoma City, and that said well is a large producer of oil from what is known as the Wilcox pool or common source of supply in said field.

Relator further alleges that in the administration of the Oil Conservation Act (chapter 131, S. L. 1933) the defendants have issued various orders concerning and governing the ratable taking of oil by relator and other producers from the Wilcox zone or common source of supply, and that relator has operated his well in accordance with the provisions, terms, and requirements of said orders. Also, that beginning with the month of September, 1934, and extending to April 1, 1935, due to conditions over which he had no control, relator has not produced the full amount of his allowable as determined and fixed by the defendants, and that the amount of underproduction which has accumulated and has been credited to said well during the aforesaid period is 115,475 barrels.

Relator further alleges that

"* * * Of the 115,475 barrels of underproduction to the credit of said well, 10,068 barrels thereof accumulated during the month of February, 1935, and was credited to said well as underage on March 1, 1935, and 14,614 barrels thereof accumulated during the month of March, 1935, and should have been credited to said well on April 1, 1935, making a total of 24,682 barrels which was and should have been credited to said well on the dates aforesaid. Plaintiff further shows in this connection that under and by the terms and provisions of order No. 8220, made and promulgated by said Commission on the 31st day of October, 1934, all owners of wells producing from the Wilcox zone, or common source of supply, in the Oklahoma City Field had the unrestricted right to make up within 60 days from the time any underage was credited to their wells, all underage so credited. That while said order is illegal, unconstitutional, null and void for the same reasons herein urged against the validity of said order No. 8674, yet even under and by virtue of the terms and provisions of said order No. 8220 the said relator was on the 1st day of April, 1935, entitled to make up said underage amounting to 24,682 credited to said well."

It is further alleged that relator's well is capable of producing its present "allowable" and in addition thereto the 115,475 barrels of underproduction or "underage" credited to it.

Relator also alleges that defendants' order No. 8674, hereinabove referred to, which seeks to cancel this accumulated "underage" is void for numerous reasons, which will be referred to hereinafter.

Relator first contends that the order is void as to him for the reason that it was entered without the notice required to be given by section 14, chapter 131, S. L. 1933. From an examination of the notice and the proof of publication thereof, we conclude that there is no merit to this contention. The notice was published; it designated the time and place of hearing; it referred to the Wilcox zone or common source of supply in the Oklahoma City field, and specified

briefly the nature of the orders, rules, and regulations sought, among others the following: "(c) Such other rules and regulations as may seem proper, equitable, or necessary for the prevention of waste and the prevention of inequitable and unfair taking of oil from the common source of supply." This notice does not offend or violate the "due process" clause of the Constitution of Oklahoma, art. 2, sec. 7 (State ex rel. Caldwell v. Hooker, 22 Okla. 712, 98 P. 964), nor the Fourteenth Amendment to the Federal Constitution. (Bellingham Bay & British Columbia R. Co. v. New Whatcomb, 172 U. S. 314, 19 S. C. 205, 43 L. Ed. 460; Londoner v. Denver, 210 U. S. 373, 28 S. C. 708, 52 L. Ed. 1103.)

Relator next contends that order No. 8674 is arbitrary, unreasonable, discriminatory, contrary to and violative of not only the proration law of the state but of the Con stitution of the United States and this state, and is therefore null and void.

Section 7, chapter 131, S. L. 1933, provides:

"The Commission is hereby empowered to make all such orders, rules, and regulations applicable to each common source of supply as it may find to be necessary or proper and/or to make general orders, rules, and regulations applicable alike to all common sources of supply in the state, in order to carry out the provisions of sections 1 to 6, inclusive, of this act."

The foregoing is the section of the act which empowers the Commission to make, change, or modify its orders applicable to each common source of supply. It was inserted in the act for a purpose. The Legislature realized, no doubt, that conditions surrounding the production of oil from a common source of supply would change from time to time. To meet the exigencies of such changed condition, the Commission was empowered by the quoted section of the act to exercise a discretion, judicial in nature, and to make and modify its orders, to accomplish the purposes of the act, that is, the prevention of waste and the permission to each producer to take his ratable part of the oil from the common source.

The act itself recognizes the fact that producers operating under the provisions of the act would have difficulty in restricting their production to the exact amount of their "allowables," and provides (sections 6 and 22) for the closing or other handling of the overproduced wells by orders of the Commission. Such provisions of the act were necessary in order to insure a ratable tak-

ing of the oil. In Sterling Refining Co. v. Walker, 165 Okla. 45, 48, 25 P. (2d) 312, Mr. Justice Busby, speaking for the court, said:

"* * * The period of overproduction must be followed by a period of underproduction until the overproduction has been equalized. This is indispensable in order that the requirements of the law providing for a ratable taking between producers be complied with."

The act nowhere mentions or makes any provision for an underproduced well being permitted to overproduce its "allowable" during any period until such underproduction credited to it has been produced, and its production thus equalized with that of other wells taking oil from the same source. However, the Commission recognized this deficiency in the act, and under the powers granted to it by section 7, supra, issued an order whereby such underproduction might be produced under certain restrictions and limitations as to time, etc., prescribed in the order. This was an act of legislative grace. Under the Proration Act the Corporation Commission is empowered to limit the amount of oil to be taken in a stated period so as to prevent waste and to provide for a ratable taking of the oil as between the producers, but it has no power to compel a producer to produce the amount of oil he is permitted or allowed to produce from the common source of supply during such period.

On August 13, 1934, the Commission entered its order No. 7879, the part of which material to the question under consideration reads as follows:

"4. All underproduction to the credit of each well in the Wilcox zone as of 7 o'clock a. m., August 1, 1934, in excess of 200 barrels, which has not been produced subsequent to August 1, 1934, shall be canceled on October 1. 1934, and thereafter on the first day of each month, all underproduction in excess of 200 barrels, to the credit of each well in said zone which has accrued prior to 7 o'clock a. m., on the first day of the second preceding calendar month, which has not been canceled nor produced, shall be canceled, except underproduction accumulated to the credit of any well voluntarily closed in by reason of having a gas/oil ratio of 7,500 cubic feet or more per barrel of liquid, which underproduction shall not be canceled; provided that, the production from any well or wells, except wells with a gas/oil ratio of 7,500 cubic feet or more per barrel of liquid, shall be first credited to the current allowable, and the excess, if any, shall be credited to the oldest accumulated underage, and any operator who has a well or wells capable of making up canceled un-

derage, or feels aggrieved or discriminated against by reason hereof, may file an application for additional time to make up such underproduction, and the Commission, upon a hearing, shall make such order relative to such underproduction as it deems just and equitable."

Subsequently, on October 31, 1934, the Commission entered its order No. 8220, which contained the identical provision with reference to the cancellation of underproduction as was contained in order No. 7879.

Thereafter the Commission entered its order No. 8674, being the order under consideration here. That part of the order which provides for the cancellation of underproduction as of April 1, 1935, was based upon findings of fact contained in the order, which read as follows:

"7. The Commission further finds, from the potentials which are being taken of wells in the Wilcox zone in conformity with its order No. 8564, that the decline of said wells during the present and previous potential periods has not been uniform, and that to carry any underproduction to the credit of any well which was accumulated during the November, 1934, potential period or previous potential periods beyond April 1, 1935, and permit same to be produced during the April, 1935, potential period would perpetuate the inequities arising from the fact that the wells do not decline uniformly, and would defeat the purpose and intent of the statutes requiring the Commission to determine the ability of wells or leases to produce, at intervals not to exceed six months and also would defeat the purpose of order No. 8564, requiring the taking of potentials of all wells in the Wilcox zone to determine the capacity or ability of each well to produce, and to eliminate the inequalities that now exist, and to place all wells on a uniform basis of production for the April, 1935, potential period; that the underproduction in said zone as of April 1, 1935, if carried forward, would absorb approximately 25 per cent. of the reasonable market demand allocated to said zone for the month of April, 1935; that, in order to prevent unreasonable and unjust discrimination as between the operators of wells in said zone during the April, 1935, potential period, and in order to promote the equitable and ratable taking of oil from wells therein situated for said period all underproduction to the credit of wells in said zone as of April 1, 1935, should be cancelled at 7 o'clock a. m., on the first day of said month except underproduction which has been credited to the high gas/oil ratio wells under prior orders of the Commission for the purpose of reimbursing the operators of said wells in keeping the same closed and conserving the gas for the benefit of all operators of wells therein situated."

Whether the foregoing findings are true, we cannot say. The evidence from which the findings were made is not before us. However, they seem reasonable on their face, and we cannot say that the order based thereon is either unreasonable or arbitrary. Nor is it discriminatory, for it apparently affects all producers in the Wilcox zone equally.

We are also of the opinion that the order does not violate either the state or federal Constitutions. Relator has no vested right in the underproduction or so-called "underage" credited to his well. In Champlin Refining Co. v. Corporation Commission, 286 U. S. 210, 76 L. Ed. 1063, the Supreme Court of the United States said:

"In Oklahoma, as generally elsewhere, landowners do not have absolute title to the gas and oil that may permeate below the surface. These minerals differing from solids in place such as coal and iron, are fugacious and of uncertain movement within the limits of the pool. Every person has the right to drill wells on his own land and take from the pools below all the gas and oil that he may be able to reduce to possession, including that coming from land belonging to others, but the right to take and thus to acquire ownership is subject to the reasonable exertion of the power of the state to prevent unnecessary loss, destruction, or waste. * * *"

The underproduction which had been credited to relator's well had accumulated through grace of the Commission. The Commission had no power to enforce its production. So long as the underproduction was permitted to stand, as a credit to the well, the Commission could not disregard it in its determination of the amount of the current or new production of oil necessary to meet the market demand, even though the production of the accumulated underage was optional with the owner of the well and could not be enforced by the Commission.

Relator says that his underage had accumulated because of conditions over which he had no control. It was not accumulated, then, through any reliance upon any order of the Commission; nor did it accumulate under any provisions of the act, for there was none. Relator's position is the same as if there had never been any orders of the Commission by which he could produce more than his current allowable to make up for an underproduction for some previous period. The Commission has found that conditions surrounding production of oil in the Wilcox zone have changed, necessitating a modification of its former orders, so

that the purposes of the Conservation Act will not be defeated. It had a right to do this under the provisions of the Conservation Act. If relator was dissatisfied with the Commission's order, he could have appealed therefrom. He has not done so. Section 29 of the Conservation Act provides, in part, as follows:

"* * * Any person affected by any legislative or administrative order of the Commission shall have the right at any time to apply to the Commission to repeal, amend, modify, or supplement the same. * * * An appeal shall lie to the Supreme Court from any order made by the Commission in any such proceedings or from the refusal of the Commission to make any order petitioned for therein, in the same manner and within the same time in which other appeals are authorized to be taken by the provisions of this act. * * *"

This section provides relator an additional legal remedy.

"When ordinary and usual remedies provided by law are available, prohibition is not appropriate remedy." Sterling Refining Company v. Walker et al., 165 Okla. 45, 25 P. (2d) 312.

For the foregoing reasons, the writ of prohibition is denied.

Heretofore, on April 19, 1935, this court issued an alternative writ of prohibition herein which, among other things, contained the following:

"It is further ordered, adjudged and decreed that until otherwise ordered by this court, said Lon Huddleston, the owner and operator of said well, shall be entitled to produce and market oil from said well without regard to the terms of said order No. 8674, but not in excess of its current allowable and its accumulated underage. In the event the said order No. 8674 is sustained by this court upon final determination hereof, all oil produced and marketed from said well in excess of the monthly allowable production therefrom shall be charged to said well as overproduction."

The alternative writ of prohibition heretofore issued, as aforesaid, is hereby dissolved, but if relator has produced and marketed from his well oil in excess of the monthly allowable production since the alternative writ of prohibition was issued, then in such event the overproduction of oil during said period shall be charged to relator's well as provided for in said alternative writ of prohibition.

Writ denied.

McNEILL, C. J., and RILEY, BUSBY, and CORN, JJ., concur. OSBORN, V. C. J., and PHELPS, J., concur in conclusion. WELCH, J., dissents. BAYLESS, J., absent.