Application of ANDERSON.

No. 33612. Feb. 14, 1950.

*214 P. 2d 896.*

Robinson, Shipp & Robertson, of Oklahoma City, for plaintiff in error.

Floyd Green, Conservation Atty., and John Blanton, Asst. Conservation Atty., both of Oklahoma City, for defendants in error.

LUTTRELL, J. This is an appeal by West Edmond Hunton Lime Unit from an order of the Corporation Commission made on March 3, 1948, increasing the allowable production of a proposed well in the center of the southwest quarter of the southwest quarter of the northwest quarter of section 3, township 12 north, range 4 west, in the West Edmond oil pool in Oklahoma county.

From the record it appears that the Corporation Commission had previously, by general order, provided that spacing units in the West Edmond pool should comprise 40 acres, and that a well should be drilled in the center of each 40-acre spacing unit. On application of Frank Anderson, owner of a lease on the northwest quarter of section 3, the Commission, on December 18, 1946, authorized him to drill a well on the southwest quarter of the southwest quarter of the northwest quarter, for the reason that only 20 acres of the 40-acre unit was considered producing territory, but in said order the Commission restricted the production from said proposed well to one-half of the allowable fixed for the wells in the West Edmond pool.

On January 2, 1948, the lease owner, Frank Anderson, filed with the Corporation Commission an application to increase the allowable production of the proposed well to the full production allowed wells drilled on the 40-acre spacing units, or in the alternative for an order increasing the allowable of the proposed well until such time as the reasonable cost and expense of drilling and completing the well was repaid. Notice of this application was duly given, and at the hearing appellant appeared and orally protested the making of such order. After hearing the evidence the Commission found: that it was doubtful that a well drilled at the proposed location would ever

pay out if the allowable was restricted to the one-half of the current allowables on wells in the field; that only a portion of the quarter quarter section in which the well was proposed to be drilled was underlaid with oil and gas; that wells drilled in this immediate area cost approximately $80,000 each, and that it was impossible to finance the proposed well unless the allowable was adjusted in such manner that at least the cost of the drilling of the well would be recovered in the event the well produced oil and gas in commercial quantities, and made an order increasing the allowable production of such well to that allowed other wells in the pool until such time as the cost of the well had been repaid, with the provision that after the cost of the well had been repaid the Commission would set the matter for further hearing, and at such time reduce the allowable of such well below one-half the usual allowable in order to make up the over production.

Appellant contends that the finding of the Commission that it is doubtful that a well drilled at the proposed location would ever pay out with the allowable restricted to one-half of the current allowables for the field is not sufficient to support the Commission's order; that the order of the Commission does not protect the correlative rights of all interested parties, and in particular the rights of appellant, and that its finding that the allowable should be modified in order to encourage the recovery of the greatest ultimate recovery of oil, and to protect the correlative rights of all interested parties, is not supported by the evidence and is contrary to law. All these contentions may be disposed of together.

The applicant, Frank Anderson, was the only witness who testified at the hearing. He testified that he had theretofore drilled a well on the northwest quarter of the northwest quarter of section 3, which proved dry; that his lease was being drained by three wells

on the west which had been producing for more than a year; that there were wells one-half mile south of the proposed location, and that his associates in the drilling venture, who apparently were interested in the well with him, refused to consider the drilling of the well so long as the allowable was placed at one-half of the allowable permitted to the wells in the field. This testimony was not in any manner controverted.

The Commission in modifying the allowable production acted under authority granted by the 1947 law, 52 O.S. 1947 Supp. §87.1, S. L. 1947, p. 328. That section, after providing for well spacing and drilling units, further provides that if any such spacing unit is located on the edge of a pool and adjacent to a producing unit, or if, for some other reason, it would be inequitable or unreasonable to require the drilling of a well at the prescribed location on such spacing unit, the Commission may make an exception to the order prescribing the spacing unit and permit the drilling of a well at some other location. It then provides:

"Whenever such an exception is granted, the Commission shall adjust the allowable production for said spacing unit and take such other action as may be necessary to protect the rights of interested parties."

From the testimony of the applicant Anderson it plainly appears that the well which he had theretofore been authorized to drill by the Commission in the southwest quarter of the southwest quarter of the northwest quarter of section 3, was located on the edge of the pool. Whether the well would produce any oil or gas when completed was questionable. But it was to the interest of the state and the landowner, as well as to the interest of the lessee, that the well be drilled if there was a possibility of production. Otherwise, the only oil recovered from this area would be that drained by offset wells, which apparently were drilled in the center of 40-acre spacing units, and whether they would drain the oil from that portion of applicant's lease, which from the evidence the Commission had theretofore found was probably productive, was also questionable. In such cases, in order to encourage the drilling of such wells and the possible production of oil therefrom, the Legislature enacted the law above referred to, and specifically authorized the Commission to make exceptions to the uniform spacing rules when wells were sought to be drilled upon the edge of any productive area, and to adjust the allowables granted to such wells. It did not prescribe any certain pattern to be followed by the Commission in making such exceptions or in adjusting the allowables in such cases, since the action of the Commission must necessarily be based upon the particular facts in each case. Therefore, the making of such exceptions and the adjustment of the allowable in such cases was left to the discretion of the Commission, and its order should be by this court sustained, unless it is shown to be arbitrary and unreasonable and an abuse of the discretion so committed to the Commission.

Considering the situation which the Commission had before it, as established by the testimony, we are unwilling to hold that the order was improperly entered, or that it did not protect the correlative rights of the interested parties. While the 40-acre spacing unit was prescribed by the Commission, evidently upon the theory that one well in the center of each 40-acre unit would drain the oil therefrom, it appears from applicant's testimony that three wells so drilled on the west of his lease had been producing for over a year, and that there were no wells closer than one-half mile to his lease from the south. Under his testimony, if he did not drill his well, the wells on the west would ultimately drain at least a portion of the oil from under his lease. There is no showing that the property immediately south of his

lease was capable of producing oil or gas. The drilling of the proposed well, if the land upon which it was to be drilled was underlaid with oil, would undoubtedly produce a much greater quantity of oil therefrom than would be drained and eventually recovered therefrom by the surrounding wells. There is no showing in the record that such well would drain any appreciable quantity of oil from the adjoining lands, and apparently the Commission was of opinion that it would not. However, under the order of the Commission, if the proposed well was a producing well, the production therefrom would be limited after the well had been paid for to offset the probability of the well having drained oil from the adjoining tracts.

We see nothing arbitrary or unreasonable about the order, but are of opinion that it was a proper order for the Commission to make under the facts and circumstances presented to it. We find nothing in Croxton v. State, 186 Okla. 249, 97 P. 2d 11, or Sterling Refining Co. v. Walker, 165 Okla. 45, 25 P. 2d 312, both cited by appellant, to the contrary.

Order affirmed.

ARNOLD, V. C. J., and WELCH, CORN, GIBSON, HALLEY, and JOHNSON, JJ., concur.