In re Application of GULF OIL CORPO-
RATION for Permission to Directionally
Drill Mainka Double Bar Unit Well No. 1
Located in the NW/4 of SW/4 of Section
1, Township 5 North, Range 5 West,
Northwest Lindsay Pool, Grady County,
Oklahoma.

No. 37293.

Supreme Court of Oklahoma.

July 9, 1957.

R. H. Dunn, A. M. DeGraffenried, N. A. Gibson, Oklahoma City, for State of Oklahoma on relation of Commissioners of Land Office of Said State.

Floyd Green, Oklahoma City, for defendant in error Corp. Commission.

James B. Diggs, Jr., Booth Kellough, Tulsa, for defendant in error Gulf Oil Corp., Sinclair Oil & Gas Co., Magnolia Pet. Co., and Phillips Petroleum Co.

DAVISON, Justice.

This proceeding, brought by the State of Oklahoma ex rel. Commissioners of the Land Office is in the nature of an appeal from an order of the Corporation Commission granting an application of Gulf Oil

Corporation for permission to directionally drill an oil well in Grady County, Oklahoma, and fixing the allowable production therefrom, in which the said relator and others (not appealing) appeared as protestants. The parties will be referred to as applicant and protestants as they appeared before the said Commission.

By previous orders of the Commission 80 acre drilling and spacing units for production of oil and gas from the Simpson Sand Series common source of supply had been established in the area here involved. Each unit consisted of either the east half or the west half of the quarter sections. If the particular unit was the east half, the drilling location was in the center of the south 40 acres; if it was the west half, the drilling location was in the center of the north 40 acres. The unit here involved was the west half of the southwest quarter of a specified section. The applicant had drilled a well in the center of the north 40 acres thereof to a depth of more than 13,000 feet in accord with those previous general orders. The hole penetrated the said Simpson Sand Series but it was found that a fault existed in the sand to the extent that the porosity and permeability had been destroyed making it impossible to produce from the formation.

Thereupon, applicant filed its application for permission to set a whipstock at about the 10,000 foot level and directionally drill said well in a southerly direction to the extent that the bottom of the hole would be some 1,320 feet south of the surface hole or approximately in the center of the south 40 acres of the drilling unit. The protestant was the owner of an undivided one half royalty interest in the drilling unit lying immediately west of the one here involved. A well had been drilled and was producing from protestant's unit at the regular pattern location in the center of the south 40 acres thereof. Thus the bottom of the hole proposed to be drilled directionally by applicant would be some 1,320 feet east of protestant's well and about the same distance south off the regular pattern in the area. Protestant, appellant here, and other parties who owned various estates in the minerals underlying protestant's unit filed protests to said application. After reference and trial before a Trial Examiner, the Corporation Commission, on February 8, 1956, entered its order adopting the report of said Trial Examiner and in effect granting the permission sought by applicant and fixing the allowable production from the proposed well at 75% of the allowable production from other wells in the spaced area. From that order, the protestant has appealed. Other protestants did not appeal therefrom.

To concisely state the situation: protestant owned a royalty interest in a north and south 80 acre unit upon which there was a producing oil well in the south 40 acres producing the full allowable; applicant owned a leasehold interest in another north and south 80 acre unit immediately east thereof upon which a dry hole had been drilled in the north 40 acres; a fault in the sand ran generally east and west across approximately the center of the north 40 acres of both units; applicant's well was bottomed in this fault; applicant wanted permission to back up and directionally drill the lower third of its well southward so that it would be bottomed approximately opposite (due east of) protestant's well; this, protestant objected to because, theoretically, it would reduce the total amount of oil that could ultimately be recovered from protestant's well; protestant also objected to an allowable for the proposed well being fixed at 75%, insisting that said percentage was more than the percentage of applicant's unit lying south of the fault.

Although argued under various subdivisions, two general propositions are presented by this appeal, namely, that the order of the Commission is void because in contravention of the statutes and the former general rules and regulations; that the order is not supported by the evidence and is arbitrary and void.

The protection of correlative rights of the parties by the Corporation Commission is analogous, and bears a marked similarity, to the protection of various equities of the parties by the courts. Each situation pre-

sents an individual and distinct situation which must, at all times, be taken into consideration. Other than for the conservation of natural resources the protection of the correlative rights of the parties constitutes the fundamental object of the orders of the Commission. Such authority of the Commission and such object of its orders are recognized and provided for by statute, 52 O.S.1951 § 87.1 et seq., particularly in subsection (b) of said section 87.1.

▪ Commenting upon the statutory provisions, this court, in the case of Application of Anderson, 202 Okl. 422, 214 P.2d 896, 898, pointed out that

> "The making of such exceptions and the adjustment of the allowable in such cases was left to the discretion of the Commission, and its order should be by this court sustained, unless it is shown to be arbitrary and unreasonable and an abuse of the discretion so committed to the Commission."

The order in the last quoted case was made for the purpose of developing "the edge of a pool" but the above statute authorizes the granting of permission for off pattern drilling "for some other reason." When the Commission acts in such a situation, it "has a wide discretion in the performance of its statutory duties. We cannot substitute our judgment on disputed questions of fact unless the findings of the Commission are not as commanded by the Constitution, supported by the law and substantial evidence." Superior Oil Co. v. Oklahoma Corp. Comm., 206 Okl. 213, 242 P.2d 454, 458; Mee v. Corporation Comm., Okl., 293 P.2d 593. The evidence disclosed by the record here leads to the conclusion that, by directionally drilling its well southward, applicant will probably complete the well as a producer which cannot be done unless the fault is avoided. The width or thickness of the fault is impossible to be accurately determined. Based upon information obtained from seismograph tests and records and upon calculation by the expert witnesses, it is reasonable to conclude that the fault is approximately 50 feet in width. The correlative rights of mineral estate owners of applicant's drilling unit would have to be disregarded by the Commission if the permission to directionally drill out of the fault were to be denied. Such a denial would be tantamount to prohibiting development of applicants' 80 acre unit because the same is traversed by a 50 foot fault. Protestant's unit, lying immediately west, was productive merely because, although crossed by the same fault, the drilling pattern placed the location of its well south of the fault. The chance location of the well site should not let one owner develop and produce oil which his neighbor was prohibited from developing and producing, all because of requiring strict compliance with an arbitrarily fixed drilling pattern. The prevention of such inequities was probably the reason why the Commission was authorized by 52 O.S.1951 § 87.1(b), supra, to grant permission to drill off pattern.

▪ The other major contention of protestant is that, in so far as the Commission's order permitted applicant to produce 75% of the allowable from the well after its completion, the same was not supported by the evidence and was contrary to the law. The 75% allowable from the 80 acres was, in effect, a finding that the unit contained 60 acres of productive formation. Protestant's contention is based upon the fact that the witnesses testified that the productive area thereof approximated between 40 and 55 acres. However, those estimates did not include the acreage which might lie north of the fault. Also it must be born in mind that protestant's unit, which was producing the full allowable, was traversed by the same fault and its productive acreage was proportionately decreased. Therefore, percentage-wise, applicant's productive acreage was approximately the same as the protestants' productive acreage. Furthermore, there was no conclusive evidence that the off pattern well of applicant would reduce, to any marked extent, the ultimate recovery from protestant's well. But, as pointed out above, our authority in modifying orders of this character may be exercised only when the same is arbitrary and unreasonable.

It was pointed out in the case of Creslenn Oil Co. v. Corporation Comm., 206 Okl. 428, 244 P.2d 314, 317, that,

"Under our limited power of review, we are not authorized to make a comparison of evidence introduced by the respective parties before the Commission, nor are we authorized to weigh the evidence to see whether the order of the Commission is in accord with the weight of the evidence."

An exhaustive study of the record herein brings us to the same conclusion, reached in the case of Application of Anderson, supra, as follows:

"We see nothing arbitrary or unreasonable about the order, but are of opinion that it was a proper order for the Commission to make under the facts and circumstances presented to it."

The order and judgment appealed from is sustained and affirmed.

CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.